# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

YIGAL SUISA; LELACH OHAYON,

*Petitioners,*

v.

ERIC H. HOLDER, JR., Attorney
General,

*Respondent.*

No. 08-2343

On Petition for Review of an Order
of the Board of Immigration Appeals.

Argued: May 12, 2010

Decided: June 30, 2010

Before NIEMEYER, DAVIS, and KEENAN,
Circuit Judges.

---

Petition for review denied by published opinion. Judge
Keenan wrote the opinion, in which Judge Niemeyer and
Judge Davis joined.

---

## COUNSEL

**ARGUED:** Ronald Darwin Richey, Rockville, Maryland, for
Petitioners. Russell John Verby, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for
Respondent. **ON BRIEF:** Tony West, Assistant Attorney

General, Civil Division, Barry J. Pettinato, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

**OPINION**

KEENAN, Circuit Judge:

Yigal Suisa and his wife, Lelach Ohayon, are citizens of Israel. They petition for review of a decision by the Board of Immigration Appeals (the Board) pretermitting consideration of their applications for adjustment of immigration status under § 245(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1255(i).[1] Finding no error, we deny the petition for review.

I.

Suisa and Ohayon originally entered the United States on visas as nonimmigrant visitors. Suisa's year of entry was 1997, and Ohayon entered this country in 2000. In July 2006, the Department of Homeland Security initiated a removal proceeding against them. In the removal proceeding, Suisa and Ohayon conceded that they had stayed in the United States beyond the temporary period authorized by their visas.

Under the established procedure for adjustment of immigration status, certain nonimmigrant aliens may become lawful permanent residents without having to leave the country to apply for an immigrant visa. *See INS v. Bagamasbad*, 429 U.S. 24, 25 n.\* (1976) (per curiam); *Lee v. U.S. Citizenship*

---

[1]In the immigration context, the term "pretermit" is used when an alien is found ineligible to apply for some form of statutory relief. *See Gonzales-Balderas v. Holder*, 597 F.3d 869, 870 (7th Cir. 2010); *Singh v. Gonzales*, 468 F.3d 135, 136 n.1 (2d Cir. 2006).

*& Immigration Servs.*, 592 F.3d 612, 614 (4th Cir. 2010) (describing the legislative history of 8 U.S.C. § 1255(i)). The failure to maintain a lawful presence in the country ordinarily would render Suisa and Ohayon ineligible for an adjustment of immigration status. *See* 8 U.S.C. § 1255(c). Suisa and Ohayon (collectively, Suisa) argued in their removal proceeding, however, that despite their current unlawful presence in this country, the provisions of 8 U.S.C. § 1255(i) nonetheless permitted them to apply for adjustment of status.[2]

A.

Congress enacted § 1255(i) in 1994, creating an exception to the general rule that use of the adjustment-of-status mechanism is limited to those lawfully present in the country. *See Lee*, 592 F.3d at 614. Congress intended that this provision be temporary and, thus, § 1255(i) included a "sunset" provision that required an alien to apply for adjustment of status between October 1, 1994 and October 1, 1997. *See* 1995 Appropriations Act, Pub. L. No. 103-317, § 506(b), (c), 108 Stat. 1724, 1765-66 (effective Oct. 1, 1994); *Lee*, 592 F.3d at 614-15. When that "sunset" provision expired, Congress added to § 1255(i) a "grandfather" clause that permitted aliens to continue to apply for adjustment of status under § 1255(i) if they were the beneficiaries of a visa petition or a labor certification application filed on or before January 14, 1998. *See* 1998 Appropriations Act, Public Law 105-119, § 111(b), 111 Stat. 2440, 2458 (1997); *Lee*, 592 F.3d at 615. In 2000, Congress extended the sunset date for a final time to April 30, 2001.[3]

---

[2]Section 1255(i) permits the "principal alien" and "a spouse or child" of that alien to apply for adjustment of status. Suisa is the "principal alien" in this case. Ohayon's eligibility under § 1255(i) is derivative of his. For this reason, we will refer to the petitioners collectively as "Suisa."

[3]In 2000, Congress added other requirements that are not at issue in this case. The alien must pay a $1,000 penalty in addition to the standard processing fees associated with an adjustment of status. The alien must be physically present in the United States and have been physically present on December 21, 2000. *See* 8 U.S.C. § 1255(i)(1)(A-C).

*See* 2001 Appropriations Act, Pub. L. 106-554, § 1502(a)(1)(B), 114 Stat. 2763, 2763A-324; *Lee*, 592 F.3d at 615.

When Suisa sought to apply for adjustment of his immigration status in 2006, the language of § 1255(i) provided, in relevant part, that

> (1) [n]otwithstanding the provisions of subsections (a) and (c) of this section, an alien physically present in the United States—
>
>> (A) who—
>>
>>> (i) entered the United States without inspection; or
>>>
>>> (ii) is within one of the classes enumerated in subsection (c) of this section;
>>
>> (B) who is the beneficiary . . . of—
>>
>>> (i) [an immigrant visa petition] under section 204 [8 U.S.C. § 1154] that was filed with the Attorney General on or before April 30, 2001; or
>>>
>>> (ii) an application for a labor certification under § 212(a)(5)(A) [8 U.S.C. § 1182(a)(5)(A)] that was filed pursuant to the regulations of the Secretary of Labor on or before such date;
>>
>> . . .
>
> may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence.

8 U.S.C. § 1255(i)(1). Under this enactment of § 1255(i), aliens who can establish that they are "grandfathered" may be entitled to apply for an adjustment of status subject to the ordinary eligibility requirements for an adjustment.[4] *See Lee*, 592 F.3d at 615-16.

## B.

As we have noted, Suisa concedes that he is present in this country unlawfully. Thus, in order to apply for an adjustment of status, he must demonstrate that he is grandfathered under the provisions § 1255(i). To do so, he relies solely on the labor certification clause, § 1255(i)(1)(B)(ii), and the following relevant facts.

In 2003, ABC Scholars Day Care Center (Scholars) offered Yigal Suisa a position as a secretary. Scholars previously had obtained an approved Labor Certification for the position on behalf of another alien, Vayal Pramod. That Certification was approved by the Department of Labor in 1999. Under the practices of the Department of Labor in 2003, a sponsoring employer was permitted to substitute a different prospective worker than the one originally named on the Labor Certifica-

---

[4]To be eligible for an adjustment of status, an alien must demonstrate that (1) "the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence," and (2) "an immigrant visa is immediately available to the alien at the time the [§ 1255(i)] application is filed." 8 U.S.C. § 1255(a), (i)(2). In the case of an application for adjustment of status based on employment, aliens must demonstrate that they are eligible for an employment-based visa and that a visa is immediately available. *See Lee*, 592 F.3d at 616; *Lendo v. Gonzales*, 493 F.3d 439, 442 (4th Cir. 2007). To do so, a prospective employer must file on behalf of the alien an application for a labor certification. *Lee*, 592 F.3d at 616. If the Department of Labor issues the certification, the prospective employer then submits a petition to the U.S. Citizenship and Immigration Services for an immigrant work visa. If the alien is eligible for grandfathering under § 1255(i), he can then apply to adjust his immigration status. *See* 8 U.S.C. § 1255(i); 8 C.F.R. § 204.5(n); *Lee*, 592 F.3d at 616.

tion.[5] *See* 20 C.F.R. § 656.30(c)(2). When Scholars offered the job to Yigal Suisa in 2003, Scholars filed with the Department of Labor an "Application for Alien Employment Certification" naming Yigal Suisa as beneficiary of the previously-approved Certification.

The immigration judge issued a ruling, which the Board upheld, that Yigal Suisa's 2003 substitution date was a disqualifying fact under 8 C.F.R. § 1245.10(j), a regulation adopted by the Attorney General to implement § 1255(i) of the INA. This regulation provides that "[a]n alien who was substituted for the previous beneficiary of the application for the labor certification after April 30, 2001, will not be considered to be a grandfathered alien." 8 C.F.R. § 1245.10(j). Applying this language to the circumstances of Yigal Suisa's substitution, the immigration judge and the Board concluded that Suisa is not a "grandfathered alien" because he was substituted on the application for labor certification after April 30, 2001. The immigration judge pretermitted consideration of the applications for adjustment of status, and the Board affirmed that decision, dismissing Suisa's appeal.

## II.

On appeal to this Court, Suisa argues that 8 C.F.R. § 1245.10(j) is invalid because it conflicts with § 1255(i). Suisa contends that § 1255(i) is a grandfather provision that plainly applies to aliens like Suisa, who are the substituted beneficiaries of labor certifications filed on or before April 30, 2001.

In support of this construction of § 1255(i), Suisa relies on our decision in *William v. Gonzales*, 499 F.3d 329 (4th Cir.

---

[5]The Secretary of Labor stopped the practice of Labor Certification substitution in 2007. *See* 20 C.F.R. § 656.11(a) (2009). The new rule, however, does not affect substitutions approved by the Department of Labor before the effective date of July 16, 2007.

2007). In *William*, we addressed § 240(c)(7)(A) of the INA, 8 U.S.C. § 1229a(c)(7)(A), which permits "[a]n alien" to file one motion to reopen a removal proceeding. William challenged an implementing regulation that imposed a bar on motions to reopen filed by aliens who have already departed the country. William argued that the regulation conflicted with § 1229a(c)(7)(A), which he asserted plainly addressed the right of all aliens, whether living inside the country or out, to file motions to reopen. *William*, 499 F.3d at 331-32. The government argued that the statute was silent regarding post-departure motions and, thus, left a gap that appropriately was filled by the regulation. *Id.* at 332.

We agreed with William, and held that the statutory language clearly permitted the filing of motions to reopen by aliens living outside the country because such individuals are a subset of all aliens, as that term was used in § 1229a(c)(7)(A). *Id.* We observed that Congress, in enacting a different section of the same statute, expressly had included a requirement of physical presence within this country for alien applicants. *Id.* at 333. We presumed that Congress acted purposefully and intentionally by omitting that same requirement from § 1229a(c)(7)(A). *Id.*

Suisa argues that like the term "alien," the term "beneficiary" includes two classes of individuals who benefit from labor certifications, namely, direct beneficiaries and substituted beneficiaries. Suisa notes that when Congress enacted 8 U.S.C. § 1255(i), Congress was aware of the practice of the Department of Labor permitting the substitution of beneficiaries in applications for labor certification. Suisa contends that if Congress had intended to exclude substituted beneficiaries from eligibility under § 1255(i), Congress would have done so expressly.

Under Suisa's interpretation, the determinative fact for deciding a substitute beneficiary's eligibility for grandfathering is the date on which the original application for labor cer-

tification was filed. According to Suisa, if that application was filed on or before April 30, 2001, an individual substituted as a beneficiary after April 30, 2001 would qualify as a "grandfathered alien." Thus, Suisa argues that 8 C.F.R. § 1245.10(j) is invalid because the regulation excludes from eligibility under § 1255(i) certain substituted beneficiaries such as Suisa whom Congress plainly intended to grandfather, based on their substitution after April 30, 2001, as the beneficiaries of labor certifications originally filed on or before that date.

## III.

Because Suisa challenges an agency's regulation, we employ the two-step analysis prescribed by the Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

### A.    *Chevron* Step One

Under the *Chevron* analysis, we first consider whether "Congress has directly spoken to the precise question" at issue. *Id.* at 842-43. If Congress' intent is clear, as Suisa contends, then our inquiry is at an end because an agency "must give effect to the unambiguously stated intent of Congress." *Id.* at 843. However, if the statute at issue is silent or ambiguous with respect to the precise issue, then we must decide whether the agency's interpretation of the statute is reasonable and, thus, entitled to deference. *Id.*

Under basic principles of statutory interpretation, we begin our analysis by considering the relevant language of § 1255(i), which grandfathers aliens who are "the beneficiary . . . of [(i) a visa petition] or (ii) an application for a labor certification . . . that was filed . . . on or before [April 30, 2001]." 8 U.S.C. § 1255(i)(1)(B). Section 1255(i) plainly does not use the term "substituted beneficiary." Rather, in this statute, Congress referred only to "the beneficiary" of two categories of

legal documents, visa petitions filed under § 204 of the INA, 8 U.S.C. § 1154, and applications for labor certification filed under § 212(a)(5)(A) of the INA, 8 U.S.C. § 1182(a)(5)(A).

In the case of a visa petition filed under § 1154, Congress' intent is clear. Visa petitions submitted under § 1154 have one, and only one, adult beneficiary. Thus, when Congress enacted § 1255(i), Congress plainly contemplated that only a valid, direct beneficiary of a visa petition be permitted to obtain grandfathered status under § 1255(i).

In the case of an application for labor certification, however, Congress' intent is decidedly less clear. Because the Department of Labor has permitted employers to "substitute" one beneficiary for another, there can be several beneficiaries of a labor certification over a period of time. As a result, the term "the beneficiary," as used in § 1255(i), could have more than one meaning.

On the one hand, the term "the beneficiary" in § 1255(i) could describe the currently-named alien beneficiary of an application for labor certification. That individual might be a direct beneficiary of the labor certification, if no substitutions have been made, or a substituted beneficiary for an originally-named alien. Conversely, this term "the beneficiary" could refer only to the initial beneficiary named on a labor certification. Under this second interpretation, § 1255(i) would eliminate eligibility for all substituted beneficiaries of a labor certification. Finally, under a third possible interpretation, the term "the beneficiary" could refer to a limited subset of substituted beneficiaries who were substituted as beneficiaries of labor certifications prior to the April 30, 2001 sunset date that Congress provided in § 1255(i).

In the same sentence of § 1255(i), therefore, Congress used the term "the beneficiary" in relation to visa petitions, which demonstrably cannot have "substituted" beneficiaries, and in relation to labor certification applications, which manifestly

can have "substituted" beneficiaries. This juxtaposition creates an ambiguity regarding Congress' intent that did not arise in *William*.

We were able to ascertain Congress' intent in *William*, based on the principle that when Congress includes particular language in one part of a statute but omits that language elsewhere in the same enactment, it generally is presumed that Congress acted intentionally and purposefully in the inclusion or exclusion of that language. *William*, 499 F.3d at 332; *see INS v. Cardoza-Fonseca*, 480 U.S. 431, 432 (1987). Here, however, we cannot draw conclusions about Congress' intent by comparing § 1255(i) to another subsection of § 1255, because the term "substituted beneficiary" does not appear anywhere in the statute. Thus, the dispositive consideration in *William*, Congress' use of particular language in one section of a statute combined with its omission of that language elsewhere in the same statute, is inapposite here. In the absence of such distinguishing language in § 1255, we hold that Congress did not express clearly its intent in § 1255(i) regarding the application of that statutory provision to aliens substituted on applications for labor certification.

## B.    *Chevron* Step Two

In the absence of a clear statement of Congress' intent, we proceed to step two of the *Chevron* analysis. We must determine whether the meaning that the Attorney General ascribed to § 1255(i), as found in the text of 8 C.F.R. § 1245.10(j), is a permissible one. *Chevron*, 467 U.S. at 844; *see William*, 499 F.3d at 332. Because Congress expressly delegated to the Attorney General the authority to establish "such regulations as [are] necessary for carrying out [the INA]," 8 U.S.C. § 1103(g)(2), the challenged regulation must be "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844. Further, the Supreme Court has instructed that deference to the Executive Branch is especially appropriate in the immi-

gration context because officials "'exercise especially sensitive political functions that implicate questions of foreign relations.'" *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (quoting *INS v. Abudu*, 485 U.S. 94, 110 (1988)).

Guided by these principles, we hold that 8 C.F.R. § 1245.10(j) is a permissible construction of § 1255(i). We presume that Congress acted purposefully when it included in § 1255(i) a deadline by which aliens must have filed a visa petition or application for labor certification. The imposition of a sunset date plainly demonstrates that Congress intended that the benefit of § 1255(i) be temporary and apply only to a discrete group of aliens whose applications were pending on April 30, 2001. That intent would be frustrated if an alien substituted many years later as the beneficiary of an application for labor certification could nonetheless take advantage of the expired provision for adjustment of status.[6] Thus, confronted with the question whether § 1255(i) applies to grandfather the substituted beneficiaries of labor certifications, the Attorney General reasonably determined that only beneficiaries substituted before April 30, 2001, the date selected by Congress, may be eligible to apply for adjustment of status under § 1255(i).[7] Accordingly, we hold that 8 C.F.R. § 1245.10(j) is a valid exercise of the Attorney General's rulemaking authority.

---

[6]Suisa argues that because he is the beneficiary an I-140 visa petition that has a "priority date" of May 1999, he should benefit from that date for purposes of his labor certification application in determining his eligibility for grandfathering under § 1255(i)(1)(B)(ii). Although Suisa may benefit from the May 1999 date for other purposes related to his immigration status, that fact does not affect our resolution of the distinct question whether Congress, in choosing the language of § 1255(i), intended to "grandfather" aliens who did not become beneficiaries of labor certifications until after April 30, 2001.

[7]Suisa relies on the canon of statutory construction providing that any ambiguities in the INA should be resolved in favor of the alien. However, we need not resort to this canon because the Attorney General has offered a reasonable construction of § 1255(i). *See Cervantes v. Holder*, 597 F.3d 229, 237 n.9 (4th Cir. 2010).

## IV.

Having upheld 8 C.F.R. § 1245.10(j), we conclude that the Board properly applied the regulation to deny Suisa's eligibility to apply for an adjustment of status under § 1255(i). For the foregoing reasons, we deny the petition for review.

*PETITION FOR REVIEW DENIED*