**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-1034

KAMLESHWAR PRASAD,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: December 10, 2014        Decided: January 12, 2015

Before DUNCAN, AGEE, and HARRIS, Circuit Judges.

Petition denied in part and dismissed in part by published opinion. Judge Harris wrote the opinion, in which Judge Duncan and Judge Agee joined.

**ARGUED:** Mark A. Mancini, WASSERMAN, MANCINI & CHANG, Washington, D.C., for Petitioner. Walter Bocchini, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Stuart F. Delery, Assistant Attorney General, Linda S. Wernery, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

PAMELA HARRIS, Circuit Judge:

Petitioner Kamleshwar Prasad ("Prasad"), a native and citizen of India who is unlawfully present in the United States, seeks to adjust his status to that of lawful permanent resident. Though persons unlawfully present in this country generally are barred from becoming lawful permanent residents, Prasad relies on an exception: Section 245(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255(i), provides that an alien who is unlawfully present in the United States may be eligible for adjustment of status if, inter alia, he is the beneficiary of a labor-certification application filed on or before April 30, 2001.

Prasad concedes that his labor-certification application was filed more than two months after the statutory deadline. He argues, however, that it was his attorney who failed to file a timely application on his behalf, and that the deadline should be equitably tolled as a result. The Board of Immigration Appeals ("BIA" or "Board") rejected that claim, holding that the § 1255(i) deadline operates as a statute of repose and thus is not subject to equitable tolling. We agree, and therefore deny the petition for review in part and dismiss in part.

## I.

## A.

Under the INA, an alien lawfully present in the United States is eligible for adjustment of status to lawful permanent resident if he or she meets certain statutory criteria. 8 U.S.C. § 1255(a).  But an alien unlawfully present is excluded from eligibility for adjustment.  8 U.S.C. § 1255(c).

In 1994, Congress created an exception to this statutory scheme, amending the INA to allow certain aliens to apply for adjustment of status notwithstanding their unlawful presence in the country.  Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1995, Pub. L. No. 103-317, § 506(b), 108 Stat. 1724, 1765-66 (1994). Congress intended that the exception be temporary, and so included a specific sunset provision requiring such aliens to apply for adjustment before October 1, 1997.  Id. at § 506(c), 108 Stat. at 1766; Suisa v. Holder, 609 F.3d 314, 315-16 (4th Cir. 2010) (detailing history of § 1255(i)); Lee v. U.S. Citizenship and Immigration Servs., 592 F.3d 612, 614-15 (4th Cir. 2010) (same).

When the original sunset date expired in 1997, Congress enacted a grandfather clause that allowed aliens to seek adjustment of status if they were the beneficiaries of labor-certification applications filed on or before January 14, 1998.

3

Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998, Pub. L. No. 105–119, § 111(a), 111 Stat. 2440, 2458 (1997). In 2000, Congress again extended the deadline, this time to April 30, 2001. LIFE Act Amendments of 2000, Pub. L. No. 106–554, § 1502(a)(1)(B), 114 Stat. 2763, 2763A–324 (2000). But that was the final extension; in 2001, Congress failed to act on a proposed bill to extend the deadline once again. See 147 Cong. Rec. 6418–19 (2001).

Accordingly, at the time that Prasad sought to avail himself of the § 1255(i) exception, it provided that an unlawfully present alien may apply to the Attorney General for adjustment of status if he or she is the beneficiary of an application for a labor certification filed "on or before" April 30, 2001. 8 U.S.C. § 1255(i)(1)(B)(ii), (C). Even if an alien satisfies that requirement, adjustment of status is not assured; additional statutory criteria must be met, and the ultimate decision whether to grant adjustment of status is within the discretion of the Attorney General. See Suisa, 609 F.3d at 316; Lee, 592 F.3d at 615–16.

**B.**

Prasad was admitted to the United States on or about May 11, 2000. It is undisputed that Prasad was unlawfully present in the United States and thus ineligible for adjustment of status under § 1255(c). He therefore turned to the § 1255(i)

4

exception, and sought to obtain the requisite labor certification.

In this he was to be assisted by attorney Earl S. David ("David"), retained by Prasad's then-employer to file a labor-certification application, as well as a visa petition, on Prasad's behalf. This was not a case in which David was required to calculate a variable due date for the application, based on the happening of some event. Instead, the due date was fixed and precisely specified by statute: April 30, 2001. Nevertheless, David filed Prasad's labor-certification application on July 13, 2001, more than two months after the statutory deadline.[1]

In 2007, assisted by different counsel, Prasad filed for adjustment of status. United States Citizenship and Immigration Services denied Prasad's application on the ground that Prasad was not the beneficiary of a labor-certification application filed on or before April 30, 2001. In the removal proceedings that followed, the Immigration Judge ("IJ") denied Prasad's

---

[1] It appears that David's performance in this case was not an aberration. In 2004, for reasons unrelated to his representation of Prasad, David was suspended for fifteen months from the practice of law in New York and from practice before the BIA, the Immigration Courts, and the Department of Homeland Security. When Prasad subsequently filed a complaint against David, the New York State Bar informed Prasad that because David had been suspended from practice, the Bar no longer had jurisdiction to investigate him.

renewed application for adjustment of status and ordered his removal to India. A.R. 90. Prasad filed a motion to reopen and reconsider, raising the equitable-tolling argument at the heart of this case: that his original attorney's ineffective assistance should serve as a basis for equitable tolling of the § 1255(i) deadline. The IJ denied Prasad's motion, concluding that there was no basis under Fourth Circuit law for tolling of the April 30, 2001 deadline and rejecting Prasad's additional claims. A.R. 47.

On December 13, 2013, the BIA affirmed the IJ's decision. A.R. 3–4. In order to prevail on his motion to reopen or reconsider, the Board explained, Prasad would have to demonstrate prima facie eligibility for the relief he sought – adjustment of status under § 1255(i)(1)(B)(ii). And that he could not do, the BIA concluded, because he had not filed a labor-certification application before April 30, 2001 and because, as the Ninth Circuit held in Balam-Chuc v. Mukasey, 547 F.3d 1044 (9th Cir. 2008), that deadline operates as a statute of repose that cannot be equitably tolled. The Board dismissed Prasad's appeal for failure to show prima facie eligibility for relief and did not address any other claims. Prasad now petitions this court for review of the BIA's order.

6

## II.

### A.

We review the BIA's legal conclusions de novo and give appropriate deference, in accordance with principles of administrative law, to its interpretation of the INA. Kuusk v. Holder, 732 F.3d 302, 304–05 (4th Cir. 2013). We review the denial of a motion to reopen and reconsider for abuse of discretion. Mosere v. Mukasey, 552 F.3d 397, 400 (4th Cir. 2009). We reverse the denial of such a motion only if the BIA acted arbitrarily, irrationally, or contrary to law. Urbina v. Holder, 745 F.3d 736, 741 (4th Cir. 2014).

### B.

Prasad's main contention on appeal is that his attorney's ineffective assistance in failing to file a timely labor-certification application justifies equitable tolling of § 1255(i)'s deadline. Like the BIA and the Ninth Circuit, we conclude that the deadline in § 1255(i) operates as a statute of repose that is not subject to equitable tolling. Whether the failures of Prasad's original counsel otherwise might warrant equitable tolling is a question we need not reach.

As the Supreme Court recently explained, a statute of repose "puts an outer limit on the right to bring a civil action," after which no cause of action can accrue. CTS Corp. v. Waldburger, 573 U.S. ——, 134 S. Ct. 2175, 2182 (2014).

7

Equivalent to a "cutoff," id. at 2183, a statute of repose operates as a substantive bar to liability, reflecting a legislative policy judgment that no legal right should be recognized after a statutorily determined end point. See id.; First United Methodist Church of Hyattsville v. U.S. Gypsum Co., 882 F.2d 862, 866 (4th Cir. 1989), cert. denied, 493 U.S. 1070 (1990). To avoid interference with those legislative judgments, statutes of repose generally are treated as "absolute time limit[s]" and are "not tolled for any reason." First United, 882 F.2d at 866; see CTS Corp., 134 S. Ct. at 2183; 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1056 (3d ed. 2002) ("[A] repose period is fixed and its expiration will not be delayed by estoppel or tolling.").

The premise of Prasad's argument is that § 1255(i)'s deadline is not a statute of repose, but instead a statute of limitations to which equitable tolling does apply. Whereas a statute of repose puts an end date on substantive liability, a statute of limitations is a purely procedural defense, imposing a time limit, usually based on when a claim accrues, during which a plaintiff must bring suit on an existing cause of action. See CTS Corp., 134 S. Ct. at 2182; First United, 882 F.2d at 865-66; see also Webb v. United States, 66 F.3d 691, 700-01 (4th Cir. 1995). A chief purpose of statutes of limitations is to require plaintiffs to pursue their claims

8

promptly and with diligence. See CTS Corp., 134 S. Ct. at 2183. It follows, the Supreme Court has explained, that where a plaintiff has done just that but has been prevented by some extraordinary circumstance from bringing a timely action, equitable tolling of the deadline may be appropriate. Id. That is exactly the rationale for Prasad's claim to equitable tolling: He made every effort to comply with § 1255(i)'s deadline, but was prevented from doing so by his attorney's extraordinary deficiencies.

We cannot agree with Prasad that the April 30, 2001 sunset date in § 1255(i) operates as a statute of limitations subject to equitable tolling. Like the Ninth Circuit, the only other federal circuit court to address the question,[2] we think that the April 30, 2001 deadline has all the hallmarks of a statute of repose, consistent with Congress's intent to "close[] the class of individuals entitled to special treatment" under § 1255(i). Balam-Chuc, 547 F.3d at 1049.

First and most important, § 1255(i) sets out a fixed and specific time-certain by which applications must be filed –

---

[2] Prasad relies here, as he did before the IJ and BIA, on a Second Circuit case, Piranej v. Mukasey, 516 F.3d 137 (2d Cir. 2008), for the proposition that the deadline in § 1255(i) is a statute of limitations subject to equitable tolling. In Piranej, however, the Second Circuit expressly declined to reach that question. Id. at 145.

April 30, 2001 – rather than a variable deadline pegged to some other event. As the Ninth Circuit explained in analyzing the text of § 1255(i), "Perhaps the most distinguishing characteristic of a statute of repose is that it establishes an outer date for bringing an action instead of a variable period of time during which a plaintiff must assert her claim." Id. (internal quotation marks omitted). Statutes of limitations typically are tied to the date on which a claim accrues, which means that the deadline may be different for each plaintiff. See CTS Corp., 134 S. Ct. at 2182. The defining feature of a statute of repose, on the other hand, is that it establishes the same deadline for everyone, setting out a "fixed, statutory cutoff date" independent of any variable related to claim accrual or discovery of an injury. Balam-Chuc, 547 F.3d at 1049; CTS Corp., 134 S. Ct. at 2182–83. Section 1255(i)'s April 30, 2001 deadline is a textbook example of a "specific date that marks the close of a class, not a general period based on discovery of an injury or accrual of a claim." Balam-Chuc, 547 F.3d at 1049.

Second, § 1255(i)'s sunset date does not operate as a procedural time limit on the bringing of some extrinsic cause of action, as a statute of limitations does. Instead, § 1255(i) defines the substantive right itself, with its sunset date one of a list of statutory conditions on eligibility for adjustment

10

of status. That kind of conferral of a substantive right or immunity from substantive liability is the work of a statute of repose, not a statute of limitations. See First United, 882 F.2d at 866 ("A statute of repose creates a substantive right in those protected to be free from liability after a legislatively-determined period of time."); cf. United States v. Brockamp, 519 U.S. 347, 352 (1997) (tax-refund provision not subject to equitable tolling because it imposed "not only procedural limitations, but also substantive limitations on the amount of recovery").

Indeed, our court already has interpreted § 1255(i)'s sunset date as marking a substantive endpoint on status-adjustment eligibility. In Suisa, 609 F.3d at 317, we considered the practice of labor-certification substitutions, by which an employer could "substitute" a different prospective worker for the original beneficiary of a § 1255(i) labor certification. The question in that case was the status of aliens substituted after the April 30, 2001 deadline as beneficiaries of labor certifications originally filed before the deadline. Suisa, 609 F.3d at 317–18. We concluded that those individuals properly were excluded from relief under § 1255(i), because the "sunset date plainly demonstrates that Congress intended that the benefit of § 1255(i) be temporary and apply only to a discrete group of aliens whose applications were

11

pending on April 30, 2001." Id. at 320. That legislative intent, we reasoned, would be "frustrated" if the class of aliens delineated by § 1255(i)'s sunset date were expanded to include those substituted in at a later date. Id.

Like the Ninth Circuit, Balam-Chuc, 547 F.3d at 1050, we think that this understanding of § 1255(i) is clear from the provision's text and also amply supported by its history. As recounted above, Congress amended the provision several times, with the express purpose of extending the deadline to a different fixed date. See 146 Cong. Rec. 27160 (2000). Had it wanted instead to establish a more flexible deadline or to create equitable exceptions, it could have done so. And had it wanted to extend the deadline beyond April 30, 2001, it could have adopted the proposed legislation doing just that, instead of failing to act on it in 2001. See 147 Cong. Rec. 6418-19 (2001); see also Suisa, 609 F.3d at 320 ("We presume that Congress acted purposefully when it included in § 1255(i) a deadline by which aliens must have filed a visa petition or application for labor certification.").

Finally, the very limited legislative history addressing the April 30, 2001 deadline confirms that it was intended and understood as a statutory cutoff date outside of which applications could not be accepted. Aware that some potential beneficiaries of § 1255(i) might have trouble meeting the

12

deadline, Senator Kennedy recommended <u>not</u> that the deadline for applications be waived or tolled, but instead that the Immigration and Naturalization Service ("INS"), which then administered the INA, consider allowing timely applicants to supplement their applications after the fact:

> [T]o ensure that all potentially eligible persons have an opportunity to qualify for 245(i), if necessary the INS should accept petitions and applications before the April 30, 2001 sunset date that do not contain all necessary supporting documents, and allow additional documents to be filed after the deadline.

146 Cong. Rec. 27161 (2000). We agree with the Ninth Circuit that this "brief reference in the legislative history recommending agency discretion" is entirely consistent with our reading of § 1255(i)'s deadline as a statute of repose. <u>Balam-Chuc</u>, 547 F.3d at 1050; <u>see also</u> <u>id.</u> at 1046.

Accordingly, we join the Ninth Circuit in concluding that the April 30, 2001 deadline in § 1255(i) operates as a statute of repose not subject to equitable tolling. That is enough to dispose of this case. As the BIA explained, Prasad's motion to reopen may be denied solely on the ground that he has not established prima facie eligibility for adjustment of status under § 1255(i). <u>See</u> <u>I.N.S. v. Abudu</u>, 485 U.S. 94, 104-05 (1988) (BIA may deny a motion to reopen on three independent grounds, including movant's failure to establish prima facie eligibility for the ultimate relief sought). Because Prasad did

13

not meet the April 30, 2001 deadline, and because that deadline is a statute of repose not subject to equitable tolling, Prasad is not eligible for relief under § 1255(i) and his motion to reopen was properly denied on that basis alone.[3]

Enforcement of Congress's deadline for § 1255(i) eligibility, like enforcement of any statute of repose, may lead to hardship in individual cases. On the record before us, this seems to be such a case: Prasad, who might well have been eligible for adjustment of status under § 1255(i) and who is undergoing cancer treatment in the United States, may be forced to leave the country because his lawyer failed to meet the April 30, 2001 deadline spelled out by statute. But § 1255(i)'s statute of repose reflects a quintessentially "legislative balance," First United, 882 F.2d at 866, allowing a specified class of persons, defined by a fixed statutory cutoff date, to apply for an adjustment of status that ordinarily would not be available to them. We are without authority to expand on that carefully crafted and limited exception. The BIA properly held

---

[3] Accordingly, like the BIA, we do not reach Prasad's claim that his attorney's failure to file a timely labor-certification application deprived him of his right to due process under the Fifth Amendment. Prasad's additional claims for humanitarian and nunc pro tunc relief are dismissed for lack of jurisdiction; neither was pressed before the BIA, barring judicial review by this court. See Urbina, 745 F.3d at 741; Massis v. Mukasey, 549 F.3d 631, 638 (4th Cir. 2008).

that the April 30, 2001 deadline imposed on § 1255(i) eligibility by Congress operates as a statute of repose that is not subject to equitable tolling, and we affirm its order.

## III.

For the reasons set forth above, we deny in part and dismiss in part Prasad's petition for review.

PETITION DENIED IN PART AND DISMISSED IN PART

15