**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 22-1499**

———————

MARVIN A.G.,

                Petitioner,

     v.

MERRICK B. GARLAND, Attorney General,

                Respondent.

———————

On Petition for Review of an Order of the Board of Immigration Appeals.

———————

Argued:  May 4, 2023                                   Decided:  June 23, 2023

———————

Before THACKER and HEYTENS, Circuit Judges, and KEENAN, Senior Circuit Judge.

———————

Petition for review granted in part and denied in part; vacated in part and remanded by published opinion.  Senior Judge Keenan wrote the opinion, in which Judge Thacker and Judge Heytens joined.

———————

**ARGUED:**  Eric Raul Suarez, SANABRIA & ASSOCIATES, Silver Spring, Maryland, for Petitioner.  Robert Paul Coleman, III, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Brian M. Boynton, Principal Deputy Assistant Attorney General, Jennifer Levings, Assistant Director, Sarah A. Byrd, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

———————

BARBARA MILANO KEENAN, Senior Circuit Judge:

Marvin A.G. (the petitioner) seeks review of the Board of Immigration Appeals' (Board) order denying his motion to reconsider the dismissal of his requests for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). In its order denying reconsideration, the Board affirmed the Immigration Judge's (IJ) finding that the petitioner, a Salvadoran national whose entire family had fled to the United States, had not established a nexus between his family membership and the threat of persecution as required for his asylum and withholding of removal claims. The Board also affirmed the IJ's finding that the petitioner had not shown acquiescence by public officials as required for his CAT claim.

Upon our review, we conclude that the Board abused its discretion by applying an incorrect legal standard in its nexus analysis for the petitioner's asylum and withholding of removal claims. We also hold with regard to these two claims that the Board abused its discretion by arbitrarily disregarding the petitioner's testimony about the threat of future persecution. However, we reject the petitioner's argument that the Board abused its discretion with regard to his CAT claim. The Board provided specific reasons for finding the petitioner's testimony insufficient to meet his burden of proof, and appropriately evaluated the evidence under the futility exception. We thus grant in part and deny in part the petition for review, vacate in part the Board's order denying reconsideration, and remand for further proceedings consistent with this opinion.

2

I.

A.

The petitioner is a native and citizen of El Salvador. Years after he entered the United States without inspection in 2005, he was placed in removal proceedings under 8 U.S.C. § 1182(a)(6)(A)(i). The petitioner conceded removability, but applied for asylum under 8 U.S.C. § 1158 and withholding of removal under 8 U.S.C. § 1231(b)(3) based on his membership in a particular social group, namely, his family. He also sought protection under the CAT. *See* 8 C.F.R. § 1208.16.

B.

We begin by summarizing the petitioner's evidence. The petitioner was raised in an area of El Salvador that "was dominated by MS-13 gang members." Several times in the early 2000s, MS-13 gang members approached the petitioner, then a teenager, and asked him to join the gang. The gang members said that "they knew that [he] had siblings in the United States," and declared that his family "would have to finance [the gang's] activities" if he joined the gang. The gang members later threatened the petitioner, asserting that if he did not work with them, they would "cut [his] tongue out" and kill him.

In 2003, gang members also tried to coerce the petitioner's brother Victor into "financ[ing] the[ gang's] misdeeds" because Victor had family members living in the United States. Although Victor refused the gang members' requests and relocated to a different area, the gang members found Victor and killed him.

Victor's neighbors witnessed the murder and knew "it was the MS-13," but no one reported the murder to the police. The petitioner testified that the neighbors did not report

the crime because they do not want "to get involved with the gang members," and he also clarified that the neighbors did not know the names of the MS-13 members who killed his brother. The petitioner explained that his family did not report the crime because "in El Salvador the police are corrupt," "so you don't know with which officer you should talk."

The police filed a report indicating that Victor's body had been found but did not investigate the murder. After Victor's death, the gang members' threats against the petitioner increased. About two years after the murder, two gang members, including one who was carrying a knife, approached the petitioner while he was walking to work (the 2005 attack). When the petitioner refused their request to join the gang, the men attacked him, threatening that "next time they [would] decapitate" him. The petitioner received emergency room treatment for the trauma he suffered during the attack, and the incident left a scar on his forehead. The gang members continued to "look[] for" and "harass" the petitioner, even appearing at his family's home. The petitioner did not report the attack or the harassment to the police because "the police never do anything with respect to that." Believing that he would not be safe if he relocated within El Salvador, he fled to the United States about one month after the 2005 attack.

Gang members continued to threaten the petitioner's brothers, stating that they would "kill all young male members in [the petitioner's] family." After all but one of his brothers fled El Salvador due to the gang's threats, "all threats were targeted toward" the only brother who remained in the country, Moises.

In 2014, gang members demanded that Moises, who had a job distributing milk to a prison, use his access to transport illegal drugs into the prison. Moises refused, and the

4

threats against him escalated.  Although Moises relocated to a relative's house about one hour away, the gang members "found out about his whereabouts and the threats continued." The police did not take any action on a report filed by Moises's company, and Moises fled to the United States because the gang members "were going to kill him."

Following Moises's refusal to cooperate with the gang and his escape to the United States, the gang members "painted the wall of [the petitioner's family home] with MS" to "mark . . . their territory."  The petitioner testified that if he went back to El Salvador, he would be at risk because the gang "always look[s] for someone in the family to kill."  His brothers had "refused to cooperate with" the gang, and the gang members "would act because they want people to respect the laws of the gang."  The petitioner also stated that it would not be safe for him to live in a different area of El Salvador not controlled by MS-13, because "they always find you."

When asked what would happen if he returned to El Salvador, the petitioner responded: "I'm completely sure – totally sure – that [the gang members] will kill me."  He explained that "if [the gang members] don't find the person that they're looking for, my brother, and they find me instead, they would kill me."  He continued that if gang members "get hold of me or any of my brothers, then they would engage in revenge killing for all members of my immediate family that refused to cooperate with them."

### C.

After the petitioner presented this evidence, the IJ rejected his claims for asylum, withholding of removal, and protection under the CAT.  On the asylum and withholding of removal claims, the IJ found that the petitioner's brother Victor did not belong to a

5

particular social group, and that the gang targeted his brother Moises based on "extortion as well as a recruitment effort combined." The IJ then concluded that the petitioner had failed to establish a nexus between his family membership and persecution in El Salvador, explaining that "family members were simply incidental to the claims for a nexus."

On the petitioner's claim for protection under the CAT, the IJ acknowledged the petitioner's testimony about the 2005 attack as well as his argument that the police did not investigate Victor's murder. The IJ nevertheless rejected the petitioner's arguments, explaining that neither the petitioner nor his family made any "effort to contact the police," that his family "didn't know who did it," and that, under those circumstances, "it would be . . . no surprise . . . that the police would not be able to find who did it." The IJ also cited "[t]he country conditions report," showing that police made arrests in other cases. Notably, the IJ did not make an adverse credibility finding regarding the petitioner's testimony. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *id.* § 1229a(c)(4)(C); *see Garland v. Ming Dai*, 141 S. Ct. 1669, 1677–78, 1681 (2021) (holding that a rebuttable presumption of credibility applies to an applicant's testimony on appeal to the Board "if the IJ did not make an explicit adverse credibility determination").

The petitioner appealed the IJ's decision to the Board. After the Board affirmed the IJ's conclusions and dismissed the appeal, the petitioner filed a motion to reconsider. The Board denied the motion, concluding that the IJ did not clearly err in its nexus determination, and reiterating the IJ's conclusion that family membership was "incidental or subordinate" to the other reasons the gang targeted the petitioner, namely, for monetary gain and gang recruitment. The Board also rejected the petitioner's argument about his

6

eligibility for protection under the CAT. The Board determined that the petitioner had failed to show that contacting the police would have been futile, and stated that the IJ's discussion of the evidence "sufficiently reflect[ed] a meaningful consideration of the testimony and evidence of record."

The petitioner timely sought review in this Court of the Board's denial of his motion to reconsider. *See* 8 U.S.C. § 1252; *Narine v. Holder*, 559 F.3d 246, 249 (4th Cir. 2009).

## II.

On appeal, the petitioner challenges the Board's denial of his motion to reconsider. We review the Board's denial of the motion for abuse of discretion and will reverse that decision "only if the [Board] acted arbitrarily, irrationally, or contrary to law." *Prasad v. Holder*, 776 F.3d 222, 225 (4th Cir. 2015). The petitioner contends that the Board abused its discretion when it (1) held that the petitioner had not established the requisite nexus for his asylum and withholding of removal claims, and (2) denied his claim for protection under the CAT.

## A.

We first address the petitioner's challenge to the Board's nexus determination. The petitioner argues that the Board improperly focused on the reason why the gang targeted his family members, rather than on why the gang would target him if he returned to El

7

Salvador.[1]  The petitioner also contends that the Board erred by disregarding his credible testimony about the threat of future persecution.

The government, relying on *Cortez-Mendez v. Whitaker*, 912 F.3d 205 (4th Cir. 2019), counters that the evidence shows that the gang targeted the petitioner because of his refusal to join the gang, rather than because of his family membership.  We disagree with the government.[2]

To establish eligibility for asylum or withholding of removal, a petitioner has the burden of showing past or threatened persecution on account of a statutorily protected status, namely, "race, religion, nationality, membership in a particular social group, or political opinion."    8 U.S.C. § 1101(a)(42)(A) (asylum); *see id.* § 1231(b)(3)(A) (withholding of removal).[3]  Here, the petitioner sought relief from removal based on his

---

[1] The petitioner also argues that the Board erred when it disregarded his testimony about the gang's motivation for the 2005 attack.  Because we vacate in part the Board's order denying reconsideration on other grounds, we do not address this alternative argument.

[2] The government also argues that "it is unclear whether [the gang members] even knew about [the petitioner's] family relationship to Victor and Moises."  However, when gang members tried to recruit the petitioner before he fled to the United States, they referred to his siblings in the United States, demanding that his family members financially support the gang's activities.  And, notably, the gang members harassed the petitioner at the same family home that the gang marked with the sign "MS" after Moises fled to the United States.  Considering this evidence, we reject the government's contention as meritless.

[3] The petitioner must establish a "well-founded fear" of persecution for his asylum claim, but he bears a higher burden of proof for his withholding of removal claim, for which he must establish a "clear probability" of persecution. *Salgado-Sosa v. Sessions*, 882 F.3d 451, 456 (4th Cir. 2018).  Nevertheless, the "core condition of eligibility—that there be a nexus between threatened persecution and a protected status—is the same" for both his asylum and withholding of removal claims, so we address them together. *Id.* at 456–57.

8

family membership, which we have held "provides a prototypical example of a 'particular social group.'" *Crespin-Valladares v. Holder*, 632 F.3d 117, 125 (4th Cir. 2011) (quotation marks and citation omitted). To establish a nexus between threatened persecution and his family membership, the petitioner was required to show that his family ties would be "'at least one central reason for' the feared persecution." *Id.* at 127 (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). "[W]e have cautioned the [Board] against taking an 'excessively narrow' approach to the nexus requirement, . . . especially in the context of family ties." *Cedillos-Cedillos v. Barr*, 962 F.3d 817, 825 (4th Cir. 2020) (quoting *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 949 (4th Cir. 2015)).

Under our well-established case law, an IJ commits legal error when the IJ centers his analysis on the reasons why the gang threatened and persecuted the petitioner's *family*, rather than on the reasons why the gang threatened the *petitioner himself*. *Perez Vasquez v. Garland*, 4 F.4th 213, 223 (4th Cir. 2021). However, in the present case, the IJ did just that, focusing primarily on why the petitioner's brothers were persecuted. The IJ observed that Victor was killed for refusing to provide money to the gang, and that Moises was targeted for two reasons, namely, for refusing the gang's recruitment efforts and because he had family in the United States who presumably could provide financial support to the gang. Based on these findings, the IJ held that "family members were simply incidental to the claims for a nexus." The Board affirmed the IJ's conclusion, adding on appeal that "[t]he mere fact that members of [the petitioner's] family have been harmed does not establish a nexus to a family-based social group," and adding in its order denying reconsideration that family membership was "incidental or subordinate to the gang

9

targeting [the petitioner] and his family members for monetary gain and gang recruitment."

*See also Diaz de Gomez v. Wilkinson*, 987 F.3d 359, 364 (4th Cir. 2021) (holding that a petitioner must "show that her family membership was 'more than an incidental, tangential, superficial, or subordinate reason'" for the persecution (quoting *Crespin-Valladares*, 632 F.3d at 127)).

Nowhere in the IJ's analysis did the IJ address the petitioner's evidence showing why the gang would target him if he returned to El Salvador.  *See Hernandez-Cartagena v. Barr*, 977 F.3d 316, 320 (4th Cir. 2020) (emphasizing that "the relevant analysis is not whether the applicant's *family* was persecuted because of a protected ground, but rather whether the *applicant himself* was persecuted because of a protected ground").  And the Board merely emphasized, with a passing reference to the threats the petitioner had faced,[4] the reasons why his family members faced persecution.  We thus conclude that the IJ erred by applying an incorrect standard in the nexus analysis, and that the Board abused its discretion because it "compounded the [IJ's] error by failing to recognize it."  *Perez Vasquez*, 4 F.4th at 223.

In addition, both the IJ and the Board failed to address substantively the petitioner's testimony about the threat of future persecution.  *See Rodriguez-Arias v. Whitaker*, 915 F.3d 968, 974 (4th Cir. 2019) ("It is an abuse of discretion for the [Board] or IJ to arbitrarily

---

[4] The Board's cursory conclusion that the gang had targeted the petitioner for "monetary gain and gang recruitment" does not remedy the Board's error.  Indeed, we fail to see how family membership necessarily was subordinate to these other motivations when the sole basis the petitioner presented for his fear of future persecution was that the gang would target him due to his relationships with his siblings.

ignore relevant evidence."). Absent from each order is any analysis of the petitioner's testimony regarding the gang's practice of "revenge killing." The petitioner testified that he feared returning to El Salvador because the gang would look for him based on his membership in his family. He emphasized that Moises, who recently had rejected the gang's recruitment efforts, no longer lived in El Salvador, and that the gang would thus target the petitioner as a proxy for his brother. Aware that the gang members had threatened to "kill all young male members in [the petitioner's] family," the petitioner testified that he was "completely sure" the gang would kill him if he returned to El Salvador due to his family members' refusal to cooperate with the gang.

The above evidence was essential to the petitioner's claim that he faced a threat of future persecution. Indeed, the only reason he offered to support the threat of future persecution was his family membership, far surpassing the requirement that the protected ground "serve[] as '*at least one* central reason for' the feared persecution." *Crespin-Valladares*, 632 F.3d at 127 (emphasis added) (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). We thus conclude that the Board committed legal error when, without any explanation, it ignored the petitioner's testimony about the threat of future persecution based on his family membership. *See Zavaleta-Policiano v. Sessions*, 873 F.3d 241, 248–49 (4th Cir. 2017). An asylum applicant "is entitled to know that the court deciding his claim reviewed all his evidence, understood it, and had a cogent, articulable basis for its determination that his evidence was insufficient." *Rodriguez-Arias*, 915 F.3d at 975 (concluding that the Board erred when it "did not engage with [the petitioner's] evidence at all" in denying his CAT claim); *see Arita-Deras v. Wilkinson*, 990 F.3d 350, 356 (4th

11

Cir. 2021) ("The Board, through its opinion, must demonstrate that it considered all the evidence presented and must articulate a 'cogent' basis supporting any conclusion that the evidence was insufficient." (citation omitted)).

Our conclusion is not altered by the government's reliance on *Cortez-Mendez v. Whitaker*, 912 F.3d 205 (4th Cir. 2019), in which we rejected the petitioner's argument that the petitioner had suffered persecution in El Salvador due to his membership in his disabled father's family. *Id.* at 210. There, the petitioner had testified that he fled to the United States not because of his family membership, but because he had rejected the gang's recruitment efforts. *Id.* We observed that the "only evidence of linkage to [the petitioner's] father" was that certain individuals had taunted the petitioner because his father was disabled, and we further observed that none of the petitioner's family members in El Salvador had suffered any harm. *Id.*

Here, however, the petitioner fully explained the threat of future persecution, testifying that, if he returned to El Salvador, he would be at risk because the gang "always look[s] for someone in the family to kill." Indeed, the petitioner testified that the gang members threatened to "kill all young male members in [his] family." He also described the gang's practice of "revenge killing," stating that the gang members would kill him if they "don't find the person that they're looking for," namely, his brother Moises.[5] In addition, in contrast to the petitioner in *Cortez-Mendez*, whose family remained in their

---

[5] The petitioner's brother Moises has since been granted withholding of removal in the United States. Thus, if removed from the United States, the petitioner would be the sole family member in El Salvador and the only immediate target for the gang.

home country without harm, the petitioner's family members here faced threats from, and one of his brothers was murdered by, gang members in El Salvador. *See* 912 F.3d at 210.

The Board thus applied the incorrect legal standard for the nexus analysis and arbitrarily disregarded relevant evidence. Accordingly, we hold that the Board abused its discretion in denying the petitioner's motion to reconsider his asylum and withholding of removal claims, and we remand for the agency to "meaningfully consider [the petitioner's] evidence" under the correct legal standard. *See Portillo Flores v. Garland*, 3 F.4th 615, 635 (4th Cir. 2021).

B.

We next address the petitioner's argument that the Board abused its discretion when it denied his motion to reconsider his CAT claim. He contends that the IJ improperly relied on his failure to report the gang's actions to the police, and that the Board compounded this error by "failing to recognize that there is no 'per se reporting requirement.'" He also contends that the Board erred in its analysis of the futility exception by "us[ing] isolated snippets of the record and fail[ing] to address all of the country conditions." We disagree with the petitioner's arguments.

To be eligible for relief under the CAT, an applicant must establish that it is more likely than not that he will be tortured if removed to his home country. 8 C.F.R. § 1208.16(c)(2). In evaluating a CAT application, the agency must consider "all evidence relevant to the possibility of future torture," including conditions in the applicant's home country, and must aggregate "the risks of torture from all sources." *Id.* § 1208.16(c)(3); *Rodriguez-Arias*, 915 F.3d at 973. The term "torture" under the CAT carries a particular

13

meaning, which is "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . when such pain or suffering is inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1); *see Rodriguez-Arias*, 915 F.3d at 971.

Acquiescence occurs when a public official, "prior to the activity constituting torture," is aware of or is willfully blind to the activity yet "breaches his or her legal responsibility to intervene to prevent such activity." *Moreno-Osorio v. Garland*, 2 F.4th 245, 256 (4th Cir. 2021) (citation omitted). Although "[a]n applicant who relinquishes a protective process without good reason will generally be unable to prove [his] government's unwillingness or inability to protect [him]," "an applicant can be excused from seeking government intervention if to do so . . . 'would have been futile.'" *Portillo Flores*, 3 F.4th at 635 (second and third alterations in original) (citation omitted).

Before the IJ, the petitioner testified that he did not report the 2005 attack because "the police never do anything." He explained that the police speak "in a friendly manner to the gang members, so one doesn't know if they're involved with them or not." The petitioner also testified that, even though the police completed a report after his brother Victor was killed, they failed to investigate his murder or to make any arrests.

The IJ and Board acknowledged this evidence but found it insufficient to support the petitioner's CAT claim. The IJ described the petitioner's testimony as "very vague," and determined that it was "no surprise . . . that the police would not be able to find who" killed Victor when the petitioner, his family, and the neighbors who witnessed Victor's

14

murder all failed to engage with the police.  The Board upheld this decision on appeal.  In its order denying reconsideration, the Board again affirmed the IJ's conclusion, recognizing the appropriate legal standard for futility and concluding that the petitioner "ha[d] not met his burden of proof."

The agency's analysis and rejection of the petitioner's testimony as insufficient distinguishes this case from *Portillo Flores*, 3 F.4th at 634–36.  There, the petitioner and his sister testified that filing a police report would increase the petitioner's risk of harm. *Id.* at 634–35.  The petitioner, his sister, his mother, and his grandmother stated that they believed that the police had visited the mother's home in coordination with local gang members, who had monitored the visit from nearby.  *Id.* at 635.  Additionally, the petitioner submitted country conditions reports showing that the local police were ineffective, and also presented expert analysis on gangs, corruption, and the risk of filing police reports. *Id.*  In "a single brief paragraph," the IJ determined that the petitioner did not suffer harm at the hands of an agent the government was unwilling or unable to control, citing general country conditions and the petitioner's failure to report the threats or attacks to the police. *Id.*  We held that the agency abused its discretion by applying the incorrect legal standard and by arbitrarily ignoring the petitioner's evidence.  *Id.* at 636.

Here, in contrast, the agency provided "specific, cogent reasons" for determining that the petitioner's evidence did not satisfy his burden under the CAT.  *Id.* (citation omitted); *see* 8 C.F.R. § 1208.16(c)(2); *Hernandez-Cartagena v. Barr*, 977 F.3d 316, 320–21 (4th Cir. 2020) ("[I]t is our responsibility to ensure that unrebutted, legally significant evidence is not *arbitrarily* ignored by the factfinder." (citation omitted) (emphasis added)).

15

Although the IJ mentioned that no one had reported Victor's murder to the police, the IJ did so not to enforce a reporting requirement, but to account for the police's decision not to investigate Victor's death. We thus find no abuse of discretion in the Board's denial of the petitioner's motion to reconsider on these grounds. *See Urbina v. Holder*, 745 F.3d 736, 741–42 (4th Cir. 2014), *abrogated on other grounds by Pereira v. Sessions*, 138 S. Ct. 2105 (2018).

We also conclude that the Board did not abuse its discretion when addressing the country conditions reports. In the IJ's order, the IJ determined that the country conditions reports "show[ed] that police make arrests." On appeal, the Board restated this finding and added that, according to the reports, "the majority of Salvadoran citizens agree that police were more effective than the previous year." Reviewing these decisions in its order denying reconsideration, the Board held that the petitioner "did not establish error in fact or law in [the Board's] prior decision."

As we repeatedly have recognized, the Board may not arbitrarily disregard evidence in its review. *See Lawrence v. Lynch*, 826 F.3d 198, 203 (4th Cir. 2016). Moreover, when reviewing a petitioner's CAT claim, "a wholesale 'failure [by] the IJ and BIA to consider evidence of country conditions constitutes reversible error.'" *Rodriguez-Arias*, 915 F.3d at 974 (explaining that "country conditions alone can play a decisive role in granting relief under the [CAT]" (alteration in original) (citation omitted)). But here, the petitioner has not identified any relevant evidence the Board overlooked. Instead, he asserts generally that the Board "failed to address all of the country conditions." We find this vague

16

allegation inadequate to reverse the Board's denial of the motion to reconsider on the CAT claim.[6] *See Narine*, 559 F.3d at 249.

## III.

For these reasons, we grant in part the petition for review with respect to the petitioner's asylum and withholding of removal claims and vacate that part of the Board's order. We deny in part his petition with respect to his claim for protection under the CAT. We remand the case to the Board for further proceedings consistent with this decision.

*PETITION FOR REVIEW*
*GRANTED IN PART,*
*DENIED IN PART;*
*VACATED IN PART*
*AND REMANDED*

---

[6] When asked at oral argument what country conditions evidence the Board disregarded, the petitioner mentioned only that "the gangs are countrywide" and that "the police in this case would be unable to act." But the breadth of the gangs' presence does not, on its own, affect our futility analysis on appeal. Moreover, our review of the country conditions reports in this case does not reveal the type of police corruption or inaction on which the petitioner principally relies, namely, a widespread failure to investigate crimes and "to control MS-13." Although two reports briefly mention "instances of corruption," the reports primarily focus on other allegations of "extralegal executions, threats, mistreatment, torture, illegal detention, and intimidation." Without minimizing the gravity of these and the many other alarming circumstances described in the country conditions reports, we note that this evidence relates only tangentially to the futility argument the petitioner presses on appeal and, thus, does not alter our conclusion here.