**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1006

FELIPE DE JESUS MOLINA MENDOZA,

      Petitioner,

v.

JEFFERSON B. SESSIONS III, Attorney General,

      Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: December 6, 2017                      Decided: January 18, 2018

Before DUNCAN and DIAZ, Circuit Judges, and Paula XINIS, United States District Judge for the District of Maryland, sitting by designation.

Petition for review granted; vacated and remanded by unpublished opinion. Judge Duncan wrote the opinion, in which Judge Diaz and Judge Xinis concurred.

**ARGUED:** Helen Parsonage, ELLIOT MORGAN PARSONAGE, Winston-Salem, North Carolina, for Petitioner. Katherine Ann Smith, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Chad A. Readler, Acting Assistant Attorney General, Civil Division, Paul Fiorino, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Petitioner-Appellant Felipe de Jesus Molina Mendoza entered the United States without authorization and requested asylum, claiming a well-founded fear of future persecution if he returned to his native country. An Immigration Judge in the Department of Justice denied Molina Mendoza's request, finding that his fear of future persecution was not objectively reasonable. The Immigration Judge cited record evidence to support his position, but he did not address any of the record evidence that undermined his decision or explain why he disregarded it. The Board of Immigration Appeals (the "BIA"), an agency in the Department of Justice, adopted and affirmed the Immigration Judge's decision without additional explanation. In this petition for review, Molina Mendoza challenges the Immigration Judge's and the BIA's findings that his fear of future persecution was not objectively reasonable. However, we cannot meaningfully review those findings because neither administrative body adequately explained its decision. Specifically, the Immigration Judge and the BIA failed to explain their conclusions in terms that would allow us to ensure that they fairly considered all of the evidence pertinent to Molina Mendoza's future-persecution claim. Accordingly, we remand this case for the agency to reevaluate Molina Mendoza's future-persecution claim and explain its decision in terms that permit effective judicial review.

I.

Molina Mendoza was born on December 13, 1991, in Acapulco Guerrero, Mexico. From an early age, he was mistreated for being gay. When he was five or six years old, a

female caretaker sexually abused Molina Mendoza. During the incident, she told him that he should be attracted to women and enjoy the way she was touching him. Around the same time, Molina Mendoza's father beat him with a belt for wearing women's clothing.

In 2000, Molina Mendoza entered the United States without authorization and remained here for nine years. During this time, Molina Mendoza began to hide his sexual orientation and experienced a temporary break from discrimination. In 2009, however, Molina Mendoza moved to Mexico City in pursuit of a university education and decided to be open about his sexual orientation.

As an openly gay man in Mexico's capital, Molina Mendoza was again subject to harassment and discrimination. In 2012, a group of men chased Molina Mendoza and his boyfriend while shouting homophobic insults at them. Molina Mendoza reported this incident to a police officer but the officer refused to take any action. Instead, he advised Molina Mendoza not to "act gay" in public. A.R. 263.

In 2013, Molina Mendoza experienced a similar incident. He was walking down the street with his boyfriend when a group of men started yelling homophobic slurs from their car. When Molina Mendoza tried to ignore the men, they began to throw glass bottles at him. One of the bottles hit Molina Mendoza on the neck. As with the 2012 incident, Molina Mendoza reported the attack to the police. But, again, the police refused to take any action.

That same year, Molina Mendoza was kissing his boyfriend in public when two officers approached them. The officers searched Molina Mendoza and his boyfriend and

ordered them to stop kissing in public. There were heterosexual couples kissing nearby but the officers did not search those couples or instruct them to stop kissing.

On March 16, 2014, Molina Mendoza presented himself at the U.S. border and requested asylum. The request was based on the mistreatment he suffered in Mexico due to his sexual orientation.

## II.

On March 22, 2014, the Department of Homeland Security initiated removal proceedings against Molina Mendoza. He conceded removability but requested asylum on two grounds. First, Molina Mendoza claimed that he suffered persecution on account of his sexual orientation while living in Mexico. Second, he claimed a well-founded fear of future persecution due to his sexual orientation if he returned there.

The term "persecution" has a specialized meaning in the context of asylum claims. Persecution is an extreme concept that includes "the infliction or threat of death, torture, or injury to one's person or freedom." *Li v. Gonzales*, 405 F.3d 171, 177 (4th Cir. 2005) (quoting *Kondakova v. Ashcroft*, 383 F.3d 792, 797 (8th Cir. 2004)). The term "does not include every sort of treatment that our society regards as offensive." *Id.* (quoting *Gormley v. Ashcroft*, 364 F.3d 1172, 1176 (9th Cir. 2004) (internal quotation marks omitted)).

The phrase "well-founded fear" is also a term of art. To establish a well-founded fear of future persecution, an asylum applicant must demonstrate that his fear is objectively reasonable. *Mirisawo v. Holder*, 599 F.3d 391, 396 (4th Cir. 2010). An

4

applicant may satisfy this standard by demonstrating that he belongs to a class of individuals that is subject to a "pattern or practice" of persecution in his home country. 8 C.F.R. § 208.13(b)(2)(iii).

On April 1, 2014, an asylum officer determined that both of Molina Mendoza's claims were credible and referred his asylum application to an Immigration Judge for full consideration. Molina Mendoza was paroled into the United States pending the final disposition of his claims.

In the proceedings before the Immigration Judge, Molina Mendoza testified about the mistreatment that he experienced in Mexico. He also proffered documentary evidence that discrimination and violence against Mexico's Lesbian-Gay-Bisexual-Transgender-Queer ("LGBTQ") community is widespread, including: (1) a report by Northwestern University School of Law and two other advocacy organizations finding that over 250 LGBTQ individuals were murdered in Mexico from 2010 to 2013 and that the Mexican government failed to adequately investigate and prosecute many of those murders, A.R. 140; (2) a report by Egale Canada--a Canadian human rights organization--finding that 76.4% of LGBTQ people in Mexico have experienced physical violence because of their sexual orientation or gender identity, 53.3% have been attacked in a public space and 20% have been assaulted by the police, A.R. 273–74; and (3) a report by Mexico's National Human Rights Commission--an official organ of the Mexican government--concluding that "Mexico suffers from a discrimination problem against the LGBT[Q] population" and that "[c]rimes and human rights violations related to sexual orientation/identity and gender expression are not isolated occurrences [but, instead,]

5

follow [from the] behavioral patterns of certain members of society and certain public servants," A.R. 308.

On the other hand, the record contained evidence that the Mexican government is fighting discrimination against LGBTQ individuals. For example, Northwestern's report finding that 250 LGBTQ individuals were murdered in Mexico between 2010 and 2013, also noted that "Mexico [should] be applauded for having taken certain positive steps in recent years to amend its constitution and enact federal legislation prohibiting discrimination on the basis of sexual orientation." A.R. 139. According to Northwestern's report, Mexico City has taken the lead in promoting tolerance for LGBTQ individuals in Mexico. In 2010, for example, the city legalized same-sex marriage and adoption. The city also required all of its police officers to undergo sensitivity training designed to improve the officers' rapport with the LGBTQ community.

On March 9, 2016, the Immigration Judge denied Molina Mendoza's asylum application. The Immigration Judge determined that Molina Mendoza failed to establish a past-persecution claim because he did not allege any harm that rose to the level of murder, torture or serious injury to his person or freedom. With regard to Molina Mendoza's second claim, the Immigration Judge concluded that Molina Mendoza did not demonstrate an objectively-reasonable fear of future persecution for two reasons.

First, the Immigration Judge found that Molina Mendoza failed to establish that LGBTQ individuals in Mexico face a pattern or practice of harm. In reaching this conclusion, the Immigration Judge acknowledged that the record contained evidence of

6

widespread discrimination against Mexico's LGBTQ community. However, he determined--without explanation--that this evidence was outweighed by a report lauding Mexico's "positive steps in recent years to amend its constitution and enact federal legislation prohibiting discrimination on the basis of sexual orientation."[1] A.R. 139.

Second, the Immigration Judge found that, even if LGBTQ individuals in Mexico face a pattern or practice of harm, Molina Mendoza failed to demonstrate that such harm is sufficiently severe to constitute persecution. Specifically, the Immigration Judge found that Molina Mendoza did not proffer persuasive evidence that his "life or freedom [would] be threatened" if he returned to Mexico. A.R. 56. In stating his conclusion, the Immigration Judge did not discuss any of the record evidence indicating that LGBTQ individuals in Mexico are routinely attacked and murdered on account of their sexual orientation.

Molina Mendoza appealed the Immigration Judge's decision to the BIA. The appeal, however, only challenged the denial of his future-persecution claim. On December 2, 2016, the BIA adopted and affirmed the Immigration Judge's decision, concluding that the judge "properly assessed the totality of the evidence, and did not

---

[1] The Immigration Judge also cited the State Department's 2013 Country Report on Mexico for the proposition that "ending discrimination and violence against minorities, including members of the LGBT community, remain[ed] a high priority for governmental and nongovernmental actors." A.R. 55. The pages cited by the Immigration Judge, however, do not discuss any efforts to reduce discrimination against Mexico's LGBTQ community. And sections of the report that address such efforts are, at best, ambiguous on the government's commitment to their success. For example, the report states that, "[while] [t]he law prohibits discrimination against LGBT individuals[,] . . . LGBT persons reported that the government did not always investigate and punish those complicit in abuses." A.R. 205.

clearly err in finding that [Molina Mendoza] [did] not have a sufficient likelihood of suffering a harm constituting persecution to show a well-founded fear of persecution." A.R. 4. The BIA did not make new factual determinations or provide additional explanations for the Immigration Judge's findings.

Molina Mendoza timely petitioned this court to review the BIA's decision. Because the BIA adopted and affirmed the Immigration Judge's decision, we review the relevant factual findings and reasoning in both opinions. *Niang v. Gonzales*, 492 F.3d 505, 511 n.8 (4th Cir. 2007).

III.

In his petition for review, Molina Mendoza challenges the Immigration Judge's and the BIA's findings that his fear of future persecution was not objectively reasonable.[2] The Immigration Judge and the BIA, however, failed to explain their future-persecution findings in a manner that permits effective judicial review. Accordingly, we remand this case without reaching the merits of Molina Mendoza's challenge.

---

[2] Molina Mendoza also challenges the Immigration Judge's denial of his past-persecution claim. But we do not have jurisdiction to review that challenge. Federal appellate courts "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). "[A]n alien who does not raise a particular claim before the BIA fails to exhaust his administrative remedies as to that claim." *Tiscareno-Garcia v. Holder*, 780 F.3d 205, 210 (4th Cir. 2015) (citing *Cordova v. Holder*, 759 F.3d 332, 336 n.2 (4th Cir. 2014)). In this case, Molina Mendoza conceded at oral argument that he did not appeal the Immigration Judge's denial of his past-persecution claim to the BIA. Accordingly, that challenge is unexhausted and we lack jurisdiction to consider it.

We explain our reasoning in two steps. First, we describe an agency's obligation to explain its factual determinations in a manner that permits a reviewing court to ensure that it fairly considered and weighed all of the record evidence. Second, we discuss the Immigration Judge and the BIA's failure to satisfy this obligation in Molina Mendoza's case.

## A.

We cannot review an agency's factual determinations unless the agency has explained its findings in terms that allow us to ensure that the agency fairly considered all of the relevant evidence. *Chen v. Holder*, 742 F.3d 171, 179 (4th Cir. 2014) (holding that agencies "must announce their decision[s] in terms sufficient to enable a reviewing court to perceive that they have thought and heard [about the evidence] and not merely reacted [to it]") (quoting *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010)). The amount and detail of explanation that the agency must provide to enable judicial review depends on the type of evidence it is evaluating. The agency is not required to discuss every piece of evidence in the record. *Id.* at 179. However, it must meaningfully account for evidence that contradicts its key findings. *Id.* at 181.

In this case, Molina Mendoza challenges the Immigration Judge's and the BIA's findings that he was ineligible for asylum in the United States because his fear of future persecution was not objectively reasonable. We cannot review this challenge unless the Immigration Judge and the BIA adequately explained their decisions. Specifically, the Immigration Judge and the BIA were required to meaningfully account for evidence

9

contradicting their conclusion that LGBTQ individuals in Mexico do not face a pattern or practice of harm that rises to the level of persecution.

B.

We cannot review the Immigration Judge's and the BIA's findings that Molina Mendoza lacked an objectively reasonable fear of future persecution because they did not adequately explain their failure to credit record evidence to the contrary. Specifically, the Immigration Judge and the BIA failed to meaningfully assess evidence contradicting two of their key findings: (1) that LGBTQ individuals in Mexico do not face a pattern or practice of harm and (2) that, even if a pattern of harm exists, the mistreatment does not rise to the level of persecution, *i.e.*, the threat or infliction of death, torture or serious injury to the victim's person or freedom.

The record contained evidence that significantly undermined the Immigration Judge's finding that LGBTQ individuals in Mexico do not face a pattern or practice of harm. For example, the record contained a report by Mexico's National Human Rights Commission acknowledging that "Mexico suffers from a discrimination problem against [its] LGBT[Q] population" and that "[c]rimes and human rights violations related to sexual orientation/identity and gender expression are not isolated occurrences [but, instead,] follow [the] behavioral patterns of certain members of society and certain public servants." A.R. 308. Similarly, the record included a report by Egale Canada finding that 76.4% of LGBTQ people in Mexico have been attacked, 53.3% have been attacked

10

in a public location and 20% have been assaulted by the police. The Immigration Judge failed to account for this evidence in a meaningful way.

To meaningfully account for evidence that contradicts one of his key findings, it is insufficient for the Immigration Judge to categorically state that all portions of the record that undermine his conclusion are outweighed by portions that support it. *See Chen*, 742 F.3d at 181 (holding that "boilerplate language . . . [is] insufficient to demonstrate that the agency gave [evidence that undermined one of its key findings] more than perfunctory consideration"); *see also Ni v. Holder*, 715 F.3d 620, 631 (7th Cir. 2013) ("[A litigant] is entitled to have the expert agency . . . evaluate in a transparent way the evidence that he has presented. Simply stating that a [particular] document defeats a claim . . . will not do."). Yet that is what the Immigration Judge did in this case. He found that countervailing evidence of systematic mistreatment of LGBTQ individuals was outweighed by a document recognizing the Mexican government's positive steps to address such discrimination without any explanation of that assessment. Indeed, he failed to discuss the Mexican National Human Rights Commission's report or Egale Canada's report at all. We are thus unable to review the basis of his determination.

The same problem plagues the Immigration Judge's conclusion that Molina Mendoza did not "show that his life or freedom will be threatened on account of [his sexual orientation] when he returns to Mexico." A.R. 56. Although Northwestern's report that 250 LGBTQ individuals were murdered in Mexico between 2010 and 2013 belies that conclusion, the Immigration Judge did not address that document at all.

11

Therefore, we are compelled to conclude that he did not meaningfully account for that evidence.

The Immigration Judge may have had good reasons for not crediting the above-mentioned reports and concluding that Mexico's LGBTQ community does not face a pattern of harm that rises to the level of persecution. He did not, however, provide them. Therefore, our review is obstructed by "a problem that has become all too common among administrative decisions challenged in this court--a problem decision makers could avoid by following the admonition they have no doubt heard since their grade-school math classes: Show your work." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017).

We conclude that the Immigration Judge did not explain his factual findings in terms that permit effective judicial review. The BIA, which merely adopted the Immigration Judge's decision without further explanation likewise failed to adequately explain its findings.

IV.

We cannot effectively review the Immigration Judge's and the BIA's findings that Molina Mendoza lacked a reasonable fear of future persecution because they did not adequately explain their evaluation of the record evidence. We therefore grant Molina Mendoza's petition for review and remand this case for the BIA to reevaluate whether Molina Mendoza's fear of future persecution was objectively reasonable in a manner that is consistent with this opinion.

12

*PETITION FOR REVIEW GRANTED; VACATED AND REMANDED*