**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-2389

JOSE MARCIAL CORTEZ-MENDEZ,

Petitioner,

v.

MATTHEW G. WHITAKER, Acting Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: September 25, 2018                    Decided: January 7, 2019

Before WILKINSON and AGEE, Circuit Judges, and James P. JONES, United States
District Judge for the Western District of Virginia, sitting by designation.

Petition for review denied by published opinion. Judge Agee wrote the opinion, in
which Judge Wilkinson and Judge Jones joined.

**ARGUED:** Melissa Jill Mitchell, LAW OFFICES OF PAUL A. SUHR, PLLC, Raleigh,
North Carolina, for Cortez-Mendez. Robert Michael Stalzer, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Paul
A. Suhr, LAW OFFICES OF PAUL A. SUHR, PLLC, Raleigh, North Carolina, for
Cortez-Mendez. Chad A. Readler, Acting Assistant Attorney General, Kiley Kane,
Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

AGEE, Circuit Judge:

Jose Cortez-Mendez, a native and citizen of El Salvador, seeks review of an order from the Board of Immigration Appeals ("BIA"). The BIA dismissed his appeal following an immigration judge's ("IJ's") denial of his application for withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3), and protection under the United Nations Convention Against Torture ("CAT"), 8 C.F.R. § 1208.16(c). For the reasons below, we deny the petition for review.

I.

Cortez-Mendez was born in El Salvador. His father, Marcial Cortez, is deaf and mute. People in El Salvador with these physical impairments have suffered routine ridicule and discrimination, despite the existence of anti-discrimination laws. *See* A.R. 422 (containing U.S. Dep't of State, El Salvador, 2014 Country Reports on Human Rights Practices). Because of his disabilities, Marcial Cortez could not provide for his family and they moved in with Cortez-Mendez's aunt. Cortez-Mendez's mother also abandoned the family when he was seven because of the family's difficulties.

As a teenager, MS-13 and MS-18 gang members began targeting Cortez-Mendez for gang recruitment. They harassed him and "threatened [him] with death, that if [he] did not become a gangster, they were going to kill [him]." A.R. 175. Despite this harassment, the gangs never physically harmed Cortez-Mendez or anyone in his family. To this day, his father, mother, sisters, and aunt live in El Salvador unharmed.

Cortez-Mendez illegally entered the United States in 2003. The Department of Homeland Security served him with a Notice to Appear, but he failed to appear at his hearing and was ordered removed to El Salvador *in abstentia*. Nevertheless, Cortez-Mendez settled in North Carolina with his uncle, girlfriend, and two children. In 2005, gang members called Cortez-Mendez's mother in El Salvador, demanded money, and demanded Cortez-Mendez's whereabouts. Through his aunt, Cortez-Mendez learned the gangs told his mother they "remembered [him] as a son of a mute and dumb person" and threatened to "kill [him] and dismember [him]" if he returned to El Salvador. A.R. 176.

In 2015, Cortez-Mendez applied for withholding of removal and CAT protection. As grounds for protection under the INA, he cited his membership in a particular social group: "member[s] of the family of Marcial Cortez who is a disabled person." A.R. 124; *see* 8 U.S.C. § 1101(a)(42). In 2016, the IJ denied Cortez-Mendez's application for withholding of removal and CAT protection. The IJ found Cortez-Mendez's testimony was credible but held his proposed particular social group did not satisfy the INA's requirements. The IJ also held that Cortez-Mendez failed to demonstrate a sufficient nexus—that is, he did not show that the "indeterminate and generalized" threats he had received in El Salvador were on account of his membership in that group. A.R. 63.

Cortez-Mendez appealed to the BIA. In its own opinion, the BIA affirmed the IJ's conclusion that "any threats [Cortez-Mendez] received or future harm he fears are the result of general criminal gang activity," not membership in his disabled father's family. A.R. 3. The BIA also affirmed the IJ's refusal to accept Cortez-Mendez's "speculat[ion] that his lower economic status and his father's disability made him more susceptible to

3

gang recruitment" because the record fairly supports the conclusion that the "harm he fears upon return [is] as a result of his rejection of gang membership rather than his father's disability." A.R. 3. The BIA thus dismissed Cortez-Mendez's appeal, and Cortez-Mendez was again ordered removed. He timely appealed, and we have jurisdiction under 8 U.S.C. § 1252.

## II.

When, as here, the BIA "adopt[s] and affirm[s]" the IJ's conclusion but adds additional reasoning in its own opinion, we review "the factual findings and reasoning contained in both decisions." *Ai Hua Chen v. Holder*, 742 F.3d 171, 177 (4th Cir. 2014); A.R. 3. If the factual findings are supported by substantial evidence, they are conclusive "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Salgado-Sosa v. Sessions*, 882 F.3d 451, 456 (4th Cir. 2018). As for legal determinations, we review them de novo. *Salgado-Sosa*, 882 F.3d at 456. Ultimately, we must affirm the BIA's decision if it is not "manifestly contrary to law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D).

## III.

In his opening brief, Cortez-Mendez argues only that the BIA erred in denying his petition for withholding of removal. Because he does not address the BIA's denial of his petition for CAT protection, he has waived his claim for CAT relief. Fed. R. App. P. 28(a)(8)(A); *see Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999).

4

To receive withholding of removal relief, Cortez-Mendez must show that, if removed to El Salvador, "there is a clear probability that [his] 'life or freedom would be threatened . . . because of'" a protected ground—here, his alleged membership in a particular social group. *Marynenka v. Holder*, 592 F.3d 594, 600 (4th Cir. 2010) (quoting 8 U.S.C. § 1231(b)(3)(A)). This standard requires two showings: First, Cortez-Mendez must show "it is more likely than not" that his life or freedom will be threatened if he returns to El Salvador. *Lizama v. Holder*, 629 F.3d 440, 446 (4th Cir. 2011) (internal quotation marks omitted). Evidence that he suffered past persecution can help to satisfy this first showing. *See* 8 C.F.R. § 1208.16(b)(1). Second, Cortez-Mendez must show that the "probability of persecution" is "link[ed]" to his status in the particular social group, that is, that the two share a nexus. *Singh v. Holder*, 699 F.3d 321, 327 (4th Cir. 2012). If he satisfies his burden of proof, withholding of removal is mandatory. *Gomis v. Holder*, 571 F.3d 353, 359 (4th Cir. 2009).

The nexus issue is dispositive of this appeal, so we dispose at the outset of two issues we need not resolve: whether Cortez-Mendez is a member of a particular social group and whether he suffered past persecution. *See* 8 U.S.C. § 1101(a)(42); 8 C.F.R. § 1208.16(b)(1). We will assume, without deciding, that Cortez-Mendez is a member of a particular social group comprised of his disabled father's immediate family members and that he suffered past persecution in El Salvador.* We will consider only whether Cortez-

---

* While "we have expressly held that the threat of death qualifies as persecution," *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 949 (4th Cir. 2015) (internal quotation marks omitted), we hesitate to conclude that Cortez-Mendez suffered past persecution here. To (Continued)

5

Mendez established the requisite nexus between any persecution he suffered and his relation to his disabled father.

A.

Whether a person's persecution shares a nexus with his alleged protected ground is a question of fact entitled to deference and reviewed for clear error. *See Crespin-Valladares v. Holder*, 632 F.3d 117, 128 (4th Cir. 2011). To establish this nexus, Cortez-Mendez must demonstrate that his membership in his disabled father's family is "at least one central reason for" the persecution he experienced or that he fears in El Salvador. 8 U.S.C. § 1158(b)(1)(B)(i). His relation to his father cannot be "incidental, tangential, superficial, or subordinate to *another* reason for harm." *Quinteros-Mendoza v. Holder*, 556 F.3d 159, 164 (4th Cir. 2009) (internal quotation marks omitted) (emphasis added). "[O]ur review of the BIA's and IJ's determination of this factual question is limited to considering whether their conclusion is 'supported by reasonable, substantial, and

---

constitute persecution, actions "must rise above the level of mere harassment," *Qiao Hua Li v. Gonzales*, 405 F.3d 171, 177 (4th Cir. 2005), and must be of "sufficient severity," *Mirisawo v. Holder*, 599 F.3d 391, 396 (4th Cir. 2010), that they "constitute a threat to life or freedom itself," *née Joseph v. Sessions*, No. 17-1403, 2018 WL 3549714, at *3 (4th Cir. July 24, 2018) (internal quotation marks omitted). Cortez-Mendez testified that he was never physically harmed by the gangs; his fears are wholly based on distant verbal threats and intimidation. We question whether the threats in the record—unspecific gang-related threats and one "death threat" communicated through two third parties, across country borders, and a decade before Cortez-Mendez sought legal protection—constitute the "extreme" persecution necessary to support withholding of removal. *Molina Mendoza v. Sessions*, 712 F. App'x 240, 242 (4th Cir. 2018). Nevertheless, we need not decide the persecution issue here.

6

probative evidence.'" *Cruz v. Sessions*, 853 F.3d 122, 128 (4th Cir. 2017) (quoting *Ngarurih v. Ashcroft*, 371 F.3d 182, 188 (4th Cir. 2004)). We conclude that it is.

B.

Cortez-Mendez disputes the IJ and BIA's conclusion that he was threatened because of "general criminal gang activity" in his hometown. A.R. 3; *see* A.R. 65–66. He asserts the gangs persecuted him because his father's disabilities caused Cortez-Mendez to be poor, "vulnerable," and "an easy mark [without] the backing and advice of a father." A.R. 148. Cortez-Mendez argues his persecution was pointedly discriminatory because he "knew many of his persecutors[ ] and had heard them ridicule his father and the rest of his family." Opening Br. 11; *see* A.R. 56. We find his arguments unpersuasive.

Cortez-Mendez presented no direct or circumstantial evidence that the gangs harassed him "on account of" his father's disabilities as opposed to his own rejection of gang membership. *See* 8 U.S.C. § 1101(a)(42). He provided no direct evidence that the gangs intimidated him because he was his father's son. His only evidence of linkage to his father is that non-gang neighborhood harassers had "made fun of" him because of Marcial Cortez's disabilities, A.R. 146–47, and the gang members who called his mother in 2005 "remembered [him] as a son of a mute and dumb person," A.R. 176. Even if either of these groups of taunters knew about Marcial Cortez's disabilities, it does not follow that they intimidated Cortez-Mendez *because of* his relation to his disabled father. *See Hernandez-Avalos*, 784 F.3d at 950 n.7 ("[N]ot . . . every threat that references a family member is made on account of family ties.").

7

Indeed, the circumstantial evidence in the record reflects a different reason for Cortez-Mendez's harassment: he rejected the gangs' recruitment efforts. Cortez-Mendez testified that he feared the gangs would harm him "if [he] did not become a gangster" or "if [he] did not [agree] to become part of the gangs." A.R. 175. Substantial evidence supports the IJ's and BIA's conclusions that the "neighborhood gangs observed the family's poverty and concluded they could easily recruit" Cortez-Mendez, A.R. 56, and that it was after Cortez-Mendez *refused to join the gangs* that they threatened him, A.R. 3–4, 66. Cortez-Mendez even admitted that he left El Salvador because had rejected gang membership: "they kept asking me to join them and be a member of the gang, and that is why I fled." A.R. 140. At most, Cortez-Mendez demonstrated that the gangs may have targeted him because of his poverty but only threatened him because he would not join their ranks. Flight from gang recruitment is not a protected ground under the INA. *See Zelaya v. Holder*, 668 F.3d 159, 166–67 (4th Cir. 2012); *Matter of S-E-G-*, 24 I. & N. Dec. 579, 589 (B.I.A. 2008). Consequently, Cortez-Mendez's own testimony of his circumstantial fears defeats his argument that a protected ground like his relation to his disabled father was "at least one central reason for" his treatment in El Salvador. *Crespin-Valladares*, 632 F.3d at 127.

Furthermore, while it is not dispositive, Cortez-Mendez testified that his father and other family members still live in El Salvador and have suffered no harm. Our decision relies on whether Cortez-Mendez—and not some other person—was persecuted because of his relation to his father, *see Hernandez-Avalos*, 784 F.3d at 950; *Crespin-Valladares*, 632 F.3d at 127 n.6, but a fact we may consider with the rest is whether other family

8

members have been persecuted because of their identical family ties, *see Mirisawo*, 599 F.3d at 398 ("The fact that family members whose political opinions Mirisawo fears will be imputed to her have not themselves faced harm fatally undermines her claim that she will suffer persecution because of her association with them."). The evidence in the record that Cortez-Mendez's family—including his disabled father—remains unharmed suggests that Cortez-Mendez's relation to his father is not the reason for the persecution he fears.

Our nexus analyses in *Salgado-Sosa*, 882 F.3d 451, and *Cordova v. Holder*, 759 F.3d 332 (4th Cir. 2014), support our conclusion. In *Salgado-Sosa*, the petitioner fled to the United States from Honduran gangs because his stepfather had angered the gangs, the petitioner defended his stepfather, and the gangs retaliated against the petitioner. 882 F.3d at 457–58. There, we found "no meaningful distinction between whether Salgado-Sosa was threatened because of his connection to his stepfather [or] because MS-13 sought revenge on him for an act committed by his stepfather," because both were derivative of his *stepfather's* dispute with the gangs. *Id.* at 458. Since the petitioner shared family ties with his stepfather, he had established a sufficient nexus between his persecution and a protected ground. *Id.* at 458–59. Cortez-Mendez, by contrast, has provided no evidence that the gangs threatened him because of his father's disabilities. Instead, he testified that his rejection of gang membership was the impetus for his harassment.

*Cordova* likewise bolsters our conclusion. There, we reversed the BIA's denial of the petitioner's application of asylum and withholding of removal because the BIA had

ignored relevant nexus evidence. *Cordova*, 759 F.3d at 339. The petitioner in *Cordova* had testified that gang members targeted him because he was related to members of a rival gang, but the BIA only considered evidence that he was targeted for rebuffing gang recruitment. *Id.* at 339–40. Here, however, the IJ and the BIA ignored no relevant evidence concerning the import of the father's disabilities because Cortez-Mendez presented none. All he provided was his unsubstantiated speculation that the gangs targeted him because of his father's disabilities. Given Cortez-Mendez's own testimony that he feared the gangs after refusing to join them, we are not "compelled" to conclude that the gangs' threats against Cortez-Mendez were on account of his father's disabilities, as opposed to Cortez-Mendez's rejection of gang membership. *See Salgado-Sosa*, 882 F.3d at 456. As such, substantial evidence supported the BIA's conclusion that Cortez-Mendez failed to establish the requisite nexus. Accordingly, the BIA did not err in denying withholding of removal.

## C.

The INA does not protect every person who rejects gang recruitment efforts. *See Zelaya*, 668 F.3d at 166–67. A petitioner seeking withholding of removal must show more. Cortez-Mendez has failed to provide either direct or circumstantial evidence that the gangs' actions against him were motivated by a protected ground. *See I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483 (1992). Consequently, Cortez-Mendez's "[f]ear of retribution over purely personal matters" cannot support his application for withholding of removal. *Moreno v. Lynch*, 628 F. App'x 862, 866 (4th Cir. 2015).

10

If we were to grant withholding of removal based on the slim evidence Cortez-Mendez has provided, every family member of a disabled person would be eligible for refugee status if *anyone* harassed them in their home country. We have rejected sweeping arguments like this before and do so again. *See, e.g.*, *Yi Ni v. Holder*, 613 F.3d 415, 429–30 (4th Cir. 2010) ("Were the fact that a person is subject to family planning policies sufficient to establish persecution, every Chinese citizen of childbearing age would be eligible for relief."). Therefore, "[u]nder the deferential substantial evidence standard we are bound to apply, we conclude that the absence of any direct evidence establishing that" gang members "intended to persecute [Cortez-Mendez] because of his familial relationship to his [father]—provided an adequate basis for a reasonable adjudicator to deny [Cortez-Mendez] relief." *Pacas-Renderos v. Sessions*, 691 F. App'x 796, 803 (4th Cir. 2017). Substantial evidence supports the IJ's and BIA's finding that Cortez-Mendez did not establish the requisite nexus, and his application for withholding of removal was properly denied.

IV.

Accordingly, Cortez-Mendez's petition for review is

*DENIED.*