**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1484**

MIRIAM VERONICA ALVAREZ-PINEDA,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Submitted: November 2, 2020                      Decided: December 1, 2020

Before THACKER and QUATTLEBAUM, Circuit Judges, and Stephanie A. GALLAGHER, United States District Judge for the District of Maryland, sitting by designation.

Petition for review granted and remand awarded by unpublished opinion. Judge Gallagher wrote the opinion, in which Judge Thacker and Judge Quattlebaum joined.

Jay S. Marks, THE LAW OFFICES OF JAY S. MARKS, LLC, Silver Spring, Maryland, for Petitioner. Joseph H. Hunt, Assistant Attorney General, Anthony P. Nicastro, Assistant Director, Patricia E. Bruckner, Civil Division, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

GALLAGHER, District Judge:

I.

Miriam Veronica Alvarez-Pineda, Petitioner, is a native and citizen of Guatemala who entered the United States without inspection on or around July 24, 2015, with her daughter, Diana Rachel Carrera-Alvarez. A.R. 299, 310. After the Department of Homeland Security ("DHS") initiated removal proceedings, Ms. Alvarez-Pineda filed an application for asylum, withholding of removal, and protection under the Convention against Torture ("CAT"). A.R. 181–93, 197–208.

Ms. Alvarez-Pineda wrote in her application that although her daughter's father, Cesar Carrera ("Carrera"), now lived in Texas, she feared his family in Guatemala would attempt to take Diana away from her if she returned to that country. A.R. 201. In an attached affidavit, Petitioner further stated that if she returned to Guatemala, she feared that she would suffer extortion, physical harm, rape, and murder from "gang members and delinquents" who "target single-mothers that lack traditional patriarchs." A.R. 103. Ms. Alvarez-Pineda wrote that she left Guatemala because she had feared that Carrera's family would kidnap Diana, *id.*, and that now she feared that gangs in Guatemala could kidnap Diana and make ransom demands if they returned. A.R. 106.

In the brief in support of her asylum application, Ms. Alvarez-Pineda identified herself as a member of the proposed particular social group comprised of "single mothers

2

in Guatemala."[1]  A.R. 281, 284–90.  She said she feared returning to Guatemala because, as a "single mother" without "traditional patriarchs," she "will be easy prey for the criminal groups," A.R. 281, especially given her assertion that the country conditions reports in the record demonstrated the Guatemalan government's "complete lack of ability to control [sic] against violence against women."  A.R. 282–83.  Ms. Alvarez-Pineda specifically identified "the threat of death and sexual violence" as the future persecution she feared. A.R. 287.

At a merits hearing on January 9, 2018, Ms. Alvarez-Pineda testified that, in July 2015, she separated from Carrera and sought to move out of the house she and Diana shared with his family.  A.R. 90-91.  The family became upset and said that Diana would have to stay in the home if Ms. Alvarez-Pineda left.  A.R. 91.  She now feared returning to Guatemala because she was unsure how Carrera's family would react, and she also believed that she would be vulnerable as a single mother to "delinquents" whom she identified as "bums on the street" and "drug addicts" who extorted money and committed theft.  A.R. 92–95.

At the same hearing, the Immigration Judge asked Ms. Alvarez-Pineda's counsel to "clarify" the basis of her asylum claim, because her declaration "seem[ed] to differ

---

[1] In order to obtain asylum, an applicant must establish that he or she has suffered persecution or has a well-founded fear of persecution on account of race, religion, nationality, political opinion and/or a particular social group.  If claiming membership in a "particular social group," the BIA requires asylum applicants to clearly delineate the specific group they claim on the record before the immigration judge.  *Matter of W-Y-C- & H-O-B*, 27 I & N Dec. 189, 191 (BIA 2018).

significantly from the claim that [was] asserted on the [asylum application]." A.R. 75. Counsel confirmed that the updated particular social group was "single mothers in Guatemala that lack traditional family structure." A.R. 76. Counsel said that she was asserting a fear of future persecution as a member of this proposed group. *Id.*

In an oral decision, the Immigration Judge denied the application for asylum, withholding of removal, and protection under the CAT, and ordered Petitioners removed to Guatemala. A.R. 47-56. The Immigration Judge found that Ms. Alvarez-Pineda's proposed particular social group of "single mothers in Guatemala that lack traditional family structure" was not cognizable under the Immigration and Nationality Act ("INA"), because it was not composed of members who share a common immutable characteristic, and it was not defined with particularity. A.R. 53. The Immigration Judge further found that, even if Ms. Alvarez-Pineda's proposed group were cognizable under the INA, she did not show eligibility for asylum because, to the extent that she feared harm from Carrera's family that would rise to the level of persecution, that claim was foreclosed by Fourth Circuit law holding that custody disputes are personal conflicts that do not constitute persecution. *Id.* Thus, the Immigration Judge held that any harm Ms. Alvarez-Pineda feared from Carrera's family would not be on account of her membership in the particular social group she proposed. *Id.*

Ms. Alvarez-Pineda appealed the Immigration Judge's decision to the Board of Immigration Appeals ("BIA"). A.R. 29-33. On April 15, 2019, the BIA dismissed her appeal. A.R. 3-4. The BIA stated that it "agree[d] with the Immigration Judge, for the reasons stated in the decision, that [Ms. Alvarez-Pineda] has not established her eligibility

4

for the relief sought." A.R. 3 (citing the Immigration Judge's decision at 4-8 (AR 50- 54)). The BIA continued that "[Ms. Alvarez-Pineda] testified that her former domestic partner physically abused her on several occasions in Guatemala," before concluding that she failed to show, "for example, that victims of domestic violence are perceived as a distinct group within society, rather than each as a victim of a particular abuser in highly individualized circumstances." A.R. 3 (internal citation omitted).

Ms. Alvarez-Pineda timely filed this petition for review.

II.

"When, as here, the BIA affirms the IJ's decision with an opinion of its own, we review both decisions." *Salgado-Sosa v. Sessions*, 882 F.3d 451, 456 (4th Cir. 2018). We review factual findings for substantial evidence, and will reverse them only if "any reasonable adjudicator would be compelled to conclude to the contrary." *Cabrera Vasquez v. Barr*, 919 F.3d 218, 222 (4th Cir. 2019) (internal quotation marks omitted); *see also* 8 U.S.C. § 1252(b)(4)(B). Legal determinations are reviewed de novo. *Salgado-Sosa*, 882 F.3d at 456. Specifically, whether a proposed group qualifies as a particular social group pursuant to 8 U.S.C. § 1231(b)(3)(A) is a question of law, which this Court reviews de novo. *Martinez v. Holder*, 740 F.3d 902, 909 (4th Cir. 2014), as revised (Jan. 27, 2014). Because "[n]either the relevant statute nor its associated regulations specifically define the term 'particular social group,'" the Court affords *Chevron* deference to the Board's reasonable interpretation of the term. *Lizama v. Holder*, 629 F.3d 440, 446–47 (4th Cir. 2011); *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). In the end, the agency's determination whether to grant relief is conclusive unless

5

"manifestly contrary to law and an abuse of discretion." *Cortez-Mendez v. Whitaker*, 912 F.3d 205, 208 (4th Cir. 2019) (internal quotation marks omitted); *see also* 8 U.S.C. § 1252(b)(4)(D).

## III.

The core of this dispute is whether the BIA's repeated reference to a particular social group, other than the one put forward by Ms. Alvarez-Pineda, constitutes reversible error. To that end, it is well established in this circuit that the BIA commits "legal error" when its "removal order reject[s] a group different from that which the [petitioner] proposed." *Crespin-Valladares v. Holder*, 632 F.3d 117, 125 (4th Cir. 2011); *see also Alvarez Lagos v. Barr*, 927 F.3d 236, 253 (4th Cir. 2019) (remanding to the BIA where the Immigration Judge "mischaracterized the group that [the petitioner] had identified").

Here, Ms. Alvarez-Pineda and her attorneys asserted that she was a member of the particular social group "single mothers in Guatemala that lack traditional family [patriarchal] structure." A.R. 76, 103. That is the particular social group that the Immigration Judge considered as well. A.R. 53. The BIA's opinion, on the other hand, referenced a different particular social group, "victims of domestic violence." A.R. 3. Specifically, the BIA concluded that "[Petitioner] has not shown, for example, that victims of domestic violence are perceived as a distinct group within society, 'rather than each as a victim of a particular abuser in highly individualized circumstances.'" *Id.* (citing *Matter of A-B-*, 27 I & N Dec. 316, 336 (A.G. 2018)). The BIA also recounted that Petitioner "testified that her former domestic partner physically abused her on several occasions in Guatemala." A.R. 3 (citing I.J. 2–4, Tr. at 24–38).

6

The BIA's characterization of Ms. Alvarez-Pineda's proposed particular social group, as well as its recounting of her supposed testimony in support of this group and her place in it, is not accurate. Nothing in the record supports the BIA's finding that Petitioner was basing her asylum claim on allegations that Carrera or his family had abused her. Indeed, at the hearing before the Immigration Judge, the parties explicitly agreed that Petitioner was no longer making a claim based on past persecution, and Petitioner clearly stated that she had "no fear whatsoever" of Carrera or his family. *Id.* at 84; *see also id.* at 83 (Petitioner testifying she had "no problem" with Carrera "before he left Guatemala"); *id.* at 104 ("Until the time that he entered the United States in 2014, I did not have any problems or threats from [Carrera] [or] his family."). After Carrera was in the United States, he stopped supporting Petitioner and her daughter, but there is no mention of violence or fear of violence from him or his family.

Petitioner's initial asylum application did include some information regarding domestic problems in Ms. Alvarez-Pineda's relationship with Carrera, but this information does not provide sufficient cover for the BIA's misplaced rejection of a domestic violence social group far different from the one she asserted. The asylum application alludes to Carrera "attempt[ing] to exert his will over [her]" and "forc[ing] her to stay in his family home" and "attempt[ing]" to take Diana away from her. A.R. 201. But neither the application nor the rest of the record includes any mention of the alleged physical abuse committed by Carrera that the BIA references in its decision. The only mention of violence in Ms. Alvarez-Pineda's brief is the "threat of death and sexual violence" that stems from her fear of delinquents on the street who know that she is a single mother, not from Carrera

7

or anyone in his family. *Id.* at 287. All of this suggests that the BIA violated *Crespin* when it rejected the particular social group of "victims of domestic violence"—and referenced testimony regarding physical violence by Carrera that does not exist in the record—as opposed to considering Ms. Alvarez-Pineda's explicitly proposed group "single mothers in Guatemala that lack traditional family [patriarchal] structure."

The Government does not dispute the general rule set forth in *Crespin*, nor does it attempt to justify the BIA's erroneous statements regarding a domestic violence social group based on the contents of the record. Instead, it relies on the BIA's general proclamation that it "agree[d] with the Immigration Judge, for the reasons stated in the [IJ's] decision that [Petitioner] has not established her eligibility for the relief sought." Gov't's Br. 14 (quoting A.R. 3). In this passage, the BIA cited to pages 4 through 8 of the IJ's opinion, which contains the Immigration Judge's rejection of the appropriate "single mothers in Guatemala that lack traditional family [patriarchal] structure" social group. The Government thus argues that the fact that the BIA referred to the Immigration Judge's decision addressing the appropriate particular social group—and "agree[d]" with it—is sufficient to find that the BIA rejected the correct particular social group and thus complied with *Crespin*.

However, the BIA did not explicitly adopt or solely rely on the IJ's opinion in the way that the Government suggests. On the contrary, the BIA included very specific language—regarding a domestic violence social group not proposed here as well as nonexistent testimony about physical domestic violence—that suggests the BIA misunderstood the Immigration Judge's decision specifically and the record generally. The

8

fourth paragraph of the BIA's decision, already referenced in part above, is instructive in demonstrating how these erroneous domestic violence references undermine the language agreeing with the Immigration Judge's reasoning:

> We agree with the Immigration Judge that [Petitioner] did not demonstrate membership in a cognizable particular social group. *Matter of A-B-*, 27 I & N Dec. 316 (A.G. 2018) (overruling *Matter of A-R-C-G-*, 26 I & N Dec. 388 (BIA 2014)). [Petitioner] has not shown, for example, that ***victims of domestic violence are perceived as a distinct group within society***, "rather than each as a victim of a particular abuser in highly individualized circumstances." *Matter of A-B-*, 27 I & N Dec. at 336. We agree with the Immigration Judge that [Petitioner] did not meet her burden of demonstrating a well-founded fear or a likelihood of persecution on account of any protected ground (IJ at 4-8). *See* 8 C.F.R. §§ 1208.13, 1208.16(b).

A.R. 3 (emphasis added). The BIA approvingly cites the Immigration Judge's assessment of Ms. Alvarez-Pineda's proposed social group, but then follows with a supporting example that fundamentally misstates the very social group the Immigration Judge had (correctly) considered. Such confused language cannot be afforded the benefit of the doubt when determining whether the BIA considered and rejected the correct particular social group.

The Government argues that if the information about domestic violence were excised from these passages, the BIA decision would be sufficient. *See Casalena v. INS*, 984 F.2d 105, 107 (4th Cir. 1993) ("[T]he [BIA] need not 'write an exegesis' on every argument presented[.]"). While this may very well be true, the BIA still must get its facts right. The specific and incorrect references in the BIA's decision illustrate that the BIA misunderstood what happened in the proceedings below.

9

IV.

This case ultimately falls squarely within the confines of *Crespin*, necessitating remand for explicit consideration of Petitioner's proposed social group "single mothers in Guatemala who lack traditional family [patriarchal] structure." Although the BIA need not write an "exegesis" on the issues presented to it, it must at the very least first understand and address those presented issues. Pursuant to the foregoing, we grant the petition for review and remand for such other and further proceedings as may be appropriate.

*PETITION FOR REVIEW GRANTED AND*
*REMAND AWARDED*