**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 22-1387**

───────────────

DEVORA ROCSANA CORDOVA-MONSON DEMARTINEZ; BRANDONLEE OSEAS MARTINEZ-CORDOVA,

        Petitioners,

    v.

MERRICK B. GARLAND, Attorney General,

        Respondent.

───────────────

On Petition for Review of an Order of the Board of Immigration Appeals.

───────────────

Submitted:  February 17, 2023                    Decided:  May 17, 2023

───────────────

Before AGEE and THACKER, Circuit Judges, and FLOYD, Senior Circuit Judge.

───────────────

Petition granted; vacated and remanded by unpublished per curiam opinion.  Judge Agee dissents.

───────────────

**ON BRIEF:** Nash Fayad, FAYAD LAW, P.C., Richmond, Virginia, for Petitioners. Brian M. Boynton, Principal Deputy Assistant Attorney General, Bernard A. Joseph, Senior Litigation Counsel, Rodolfo D. Saenz, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Devora Rocsana Cordova-Monson Demartinez (Cordova-Monson) and her son, natives and citizens of Guatemala, petition for review of an order of the Board of Immigration Appeals (Board) dismissing their appeal from the Immigration Judge's denial of Cordova-Monson's applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). For the reasons discussed below, we grant the petition for review, vacate the Board's order, and remand for further proceedings.

Cordova-Monson testified that she lived in this country illegally from 2003 to 2010. During that time, her family in Guatemala experienced two incidents of extortion with gang members. In 2008, her father was kidnapped, beaten, and held for ransom, which was paid by one of her brothers. In 2009, a man approached Cordova-Monson's mother and asked for money in exchange for not kidnapping Cordova-Monson's other son, which she paid. After Cordova-Monson returned to Guatemala in 2010, she experienced three incidents involving extortion. In June 2010, a man called her on the phone, identified Cordova-Monson as "Devora," and asked for money, telling her they were going to kidnap her family, the ones she loved the most. Cordova-Monson paid this demand. In 2011, two masked men approached Cordova-Monson outside a restaurant, held her at knifepoint, and took 500 Quetzales from her purse which she had recently withdrawn from the bank. She was too afraid to report this incident to police, fearing danger to her family because it was known that gang members went after people who reported crimes to law enforcement. In November 2015, gang members called Cordova-Monson on the phone and demanded 25,000 Quetzales, threatening to kill her if she failed to pay. She refused. The next day,

2

the same person called and asked about the money, reminding her that she had a "big and pretty family." She refused again and the person again threatened to kill her. Cordova-Monson told the caller she was tired of them because they'd already kidnapped her father and she wanted to be free from them, ultimately asking for more time to pay but intending to leave the country. She left Guatemala in December 2015. In June 2016, Cordova-Monson's son, who had previously been extorted and threatened with death, was shot at on his way home from school, the four bullets hitting a car instead of him.

Cordova-Monson disputes the Board's finding, dispositive of her asylum and withholding of removal claims, that she failed to demonstrate the requisite nexus between the harm she experienced and fears and a protected ground, in this case her membership in the Cordova family and anti-gang political opinion.

A protected ground advanced by the applicant "must be at least one central reason for the feared persecution but need not be the only reason." *Oliva v. Lynch*, 807 F.3d 53, 59 (4th Cir. 2015) (internal quotation marks omitted). As we recently emphasized, "the protected ground need not be *the* central reason or even a dominant central reason for the applicant's persecution. Rather, the applicant must demonstrate that their protected status was or would be more than an incidental, tangential, superficial, or subordinate reason for their persecution." *Perez Vasquez v. Garland*, 4 F.4th 213, 221 (4th Cir. 2021) (citation and internal quotation marks omitted); *see also Arita-Deras v. Wilkinson*, 990 F.3d 350, 360 (4th Cir. 2021) (same) (concluding that applicant was targeted on account of her husband's family because the gang threatened to kill her if her husband did not return to

3

Honduras).  "[P]ersecution may be on account of multiple central reasons or intertwined central reasons."  *Oliva*, 807 F.3d at 60.

To establish nexus to a family-based social group, the applicant is "required to demonstrate that the alleged persecution he experienced was on account of his membership in his nuclear family, which means his membership in his family had to be at least one central reason for the persecution."  *Portillo Flores v. Garland*, 3 F.4th 615, 631 (4th Cir. 2021) (en banc) (internal quotation marks omitted).  Significant to the nexus analysis is whether the applicant can show that membership in the advanced group is "why she, and not another person," was threatened with persecution.  *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 950 (4th Cir. 2015).  "[T]he relevant analysis is not whether the applicant's family was persecuted because of a protected ground, but rather whether the applicant himself was persecuted because of a protected ground."  *Hernandez-Cartagena v. Barr*, 977 F.3d 316, 320 (4th Cir. 2020); *see Madrid-Montoya v. Garland*, 52 F.4th 175, 181 (4th Cir. 2022).

As the Supreme Court has explained, an applicant is not required to provide direct proof of the persecutor's motive, but, because motive is "critical," the applicant "must provide *some* evidence of it, direct or circumstantial."  *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992).  Whether the applicant is seeking asylum or withholding of removal, she must demonstrate "a nexus between threatened persecution and a protected status."  *Salgado-Sosa v. Sessions*, 882 F.3d 451, 456-57 (4th Cir. 2018).

"Whether a person's persecution shares a nexus with his alleged protected ground is a question of fact entitled to deference and reviewed for clear error."  *Cortez-Mendez v.*

*Whitaker*, 912 F.3d 205, 209 (4th Cir. 2019); *see also Perez Vasquez*, 4 F.4th at 221 (noting that persecutor's motivation is a "classic factual question" (internal quotation marks omitted)).  Our review of the Board's "determination of this factual question is limited to considering whether [the Board's] conclusion is supported by reasonable, substantial, and probative evidence." *Cortez-Mendez*, 912 F.3d at 209 (internal quotation marks omitted); *see also Cruz v. Sessions*, 853 F.3d 122, 128 (4th Cir. 2017) (same).

Upon review, we find that the Board's conclusion that Cordova-Monson failed to establish the requisite nexus to a protected ground is not supported by substantial evidence. The record reflects that Cordova-Monson's membership in the Cordova family was one central reason why she was targeted by gangs, as evidenced by them calling her by her first name, targeting her various family members, threatening to kidnap her other son, and referencing her "big and pretty" family when extorting and threatening her.  These facts demonstrate that Cordova-Monson's family membership was not a tangential, subordinate, incidental or superficial reason for her persecution; rather, they show that she was targeted because she was a Cordova family member.  Cordova-Monson, and other members of the Cordova family, had paid up before and, the gangs were betting, would do so again.

Similarly, the facts call into question the Board's finding that Cordova-Monson failed to qualify for CAT protection. *See* 8 C.F.R. § 1208.16(c)(2) (2022).  The Board held that Cordova-Monson fears private actors but failed to show that she, individually, is more likely than not to suffer torture by, or at the instigation of, or with the consent or acquiescence of, a public official or other person acting in an official capacity.  We agree

5

with Cordova-Monson that a more detailed analysis of her CAT claim is warranted. *See* 8 C.F.R. § 1208.18(a) (2022).

Accordingly, we grant the petition for review, vacate the Board's order, and remand for further proceedings consistent with this opinion. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*PETITION GRANTED;*
*VACATED AND REMANDED*

AGEE, Circuit Judge, dissenting:

I would deny the petition for review. Substantial evidence supports the denial of asylum and withholding of removal because Cordova-Monson failed to establish the requisite nexus to a protected ground. Likewise, she did not meet her burden to qualify for CAT protection.